## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Tracy Abernathy, *et al.*

     **Plaintiffs,**

-v-                              **Case No. 2:10–cv–131**

Corinthian Colleges, Inc.             **Judge Michael H. Watson**

     **Defendant.**


## OPINION AND ORDER

Plaintiff Tracy Abernathy ("Abernathy") seeks damages from Defendant Corinthian Colleges, Inc. ("CCI" or "Defendant") for alleged quid pro quo sexual harassment in violation of 42 U.S.C. § 2000e, *et seq.*, by former CCI employee William DeFusco ("DeFusco") and retaliation for reporting such harassment in violation of 42 U.S.C. § 2000e, *et seq.*, and Ohio Revised Code  § 4112.99. Plaintiff Jennifer Brown ("Brown") seeks damages for retaliation for reporting sexual harassment.  Plaintiffs seek to exclude: (1) evidence related to Abernathy's addiction to pain killers, theft of pain killers from a past employer, and subsequent loss of her nursing license; (2) Witness Brenda Brown's reference to missing medications; (3) evidence regarding Abernathy's shoplifting arrest; (4) evidence about a restraining order against Abernathy by her husband;

(5) Plaintiffs' and other witnesses' off-color remarks in emails and other communications; (6) Brown's past sexual abuse; (7) Brown's breast supplementation surgery; (8) CCI's policy on sexual harassment and any investigation which was done in response to Plaintiffs' complaints; (9) CCI's company policy on destroying handwritten notes of sexual harassment investigations; and (10) mention of the claims previously dismissed in this case. ECF No. 89. In addition, Plaintiffs seek an adverse inference in regards to the destruction of the handwritten notes taken during Defendant's investigation of Plaintiffs' reports of sexual harassment. *Id.* Defendant's motion in limine seeks to exclude: (1) the video and transcript of Rodney Tomczak's deposition; (2) the deposition of Lawana Shipley; and (3) evidence of damages. ECF No. 99. In addition, Defendant seeks to limit the number of current and former CCI employees Plaintiffs may call to illustrate that other employees did not meet performance expectations and yet were not fired. *Id.*[1] Finally, Defendant moves to quash a subponea against CCI's in-house counsel, ECF No. 105.

The Court discussed the motions with counsel at the pre-trial conference on December 18, 2012.

---

[1] These motions in limine were filed in response to the Court's order that all requests for exclusions be combined in one omnibus motion. Accordingly, Plaintiffs' first motion in limine, ECF No. 69; Plaintiffs' second motion in limine, ECF No. 79; and Plaintiffs' third motion in limine, ECF No. 83, are all moot. In addition, the parties have refiled the witness and exhibits list and, therefore, Defendant's motion for leave to file a statement and witness list, ECF No. 72, is also moot.

# I. FACTS

During the time in which Abernathy worked as a Medical Assisting Instructor and Brown worked as an Admissions Representative for CCI, DeFusco was the President of CCI's Gahanna, Ohio locations.  Abernathy alleges that DeFusco propositioned her for sexual favors, she did not comply, and as a result, she was denied promotion to Medical Assisting Chair, a position for which she had been recommended by Director of Education Rodney Tomczack.   Abernathy and Brown reported what they perceived to be inappropriate behavior to CCI human resource officials and filed a state court law suit.  Plaintiffs allege that future discipline and/or terminations were in retaliation for their reports and law suit.

# II. DISCUSSION

## A. Plaintiffs' Motion

Plaintiffs argue each of the items mentioned above is excludable because they are not relevant under Federal Rule of Evidence 401 and, even if they are relevant, the danger of unfair prejudice substantially outweighs their probative value under Federal Rule of Evidence 403.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

### 1. Abernathy's Addiction to Pain Killers, Theft of Medication, and Suspension of her Nursing License

Plaintiffs argue that these topics are not relevant to the subject matter of sexual harassment. Defendant argues this evidence is relevant to why Abernathy was terminated.

According to Defendant's representations at the hearing, on Abernathy's initial job application for work with CCI, she stated that she voluntarily left her former employer because they were requesting that she work too many hours. In fact, she was terminated from that job for stealing medications. In addition, when Abernathy applied for a transfer to the CCI Brandon campus in Florida, she represented that she had been a nurse for fifteen years, when in fact her nursing license had been suspended and never renewed. Defendant learned of these misrepresentations at Abernathy's deposition in the previous state case between the parties. Defendant argues that Abernathy's transfer was already under way but that once the Brandon campus in Florida learned of the misrepresentations, they terminated her soon after.

Plaintiffs respond that this reason for termination is highly suspect because it has only recently been offered and Abernathy disclosed her misrepresentations to Rodney Tomczack, and he did not report her and recommended her for a promotion.

Defendant has not produced a reason why Abernathy's addiction is relevant to the proceedings. Defendant argues that it terminated Abernathy because of her misrepresentations, not because of her past addiction. In addition, Defendant may not argue that Abernathy's past addiction is evidence of her current untrustworthiness. *United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009) ("As a general matter, prior drug use is not relevant to a witness's character for truthfulness."). Accordingly, evidence on Abernathy's addiction is not relevant and must be excluded.

The Court holds that the information on Abernathy's theft and suspension of her nursing license meets the standard for relevancy because it relates to whether Defendant had a legitimate reason for termination, an element of Abernathy's retaliation claims. However, the evidence of theft and suspension of her nursing license has the potential to be unfairly prejudicial. And though it *may* be probative of why Abernathy was ultimately terminated from CCI, the Court has not seen any documentation or other evidence to support this justification. Accordingly, the Court excludes the evidence of Abernathy's theft and the suspension of her nursing license unless Abernathy offers an alternative

explanation for leaving her former employer. In addition, if Defendant can present evidence to corroborate its assertion that Abernathy was terminated for lying on her job application, Defendant may request that the Court reconsider this ruling.

### 2. Witness Brenda Brown's Testimony on Missing Medication

Plaintiffs argue that any mention of medication going missing at CCI while Abernathy was employed at CCI is not relevant because no one ever accused Abernathy of taking the medication or investigated the matter further. In its brief, Defendant states it does not intend to offer this evidence unless Plaintiff somehow opens the door. Therefore, the Court sustains Plaintiffs' motion to exclude Brenda Brown's testimony about medication missing at CCI.

### 3. Abernathy's Shoplifting

Again, Plaintiffs argue Abernathy's shoplifting conviction in either 2010 or 2011 has nothing to do with the subject matter of sexual harassment. Defendant argues that it goes to her credibility and is admissible under Federal Rule of Evidence 609.

Rule 609(a) provides that:

[f]or the purpose of attacking the character for truthfulness of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . . and

> (2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

Fed. R. Evid. 609(a).

As an initial matter, the parties do not point the Court to evidence concerning whether the conviction was a felony or a misdemeanor. The Court, therefore declines to consider whether the evidence is admissible under Rule 609(a)(1).

Abernathy's conviction is not admissible for impeachment purposes under Rule 609(a)(2). As clarified by the 1990 Advisory Committee notes, crimes requiring proof of "dishonesty and false statement" include crimes such as "perjury, subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Fed. R. Evid. 609 advisory committee's note. The United States Court of Appeals for the Sixth Circuit has declined to extend that rule to crimes like shoplifting. *United States v. Rattigan*, No. 92–3597, 1993 WL 190910, at *4–5 (6th Cir. June 2, 1993) (stating in Ohio, shoplifting only requires permanently depriving the owner of property); *see also Speers v. University of Akron*, 196 F. Supp. 2d 551, 558 (N.D. Ohio 2002) (shoplifting charge is plainly inadmissible as a crime involving dishonesty).

The conviction would be admissible if it rests upon facts that involve some element of active misrepresentation. *Rattigan,* 1993 WL 190910, at *5. However, the Court is unaware of the facts surrounding the previous conviction.

Accordingly, evidence of Abernathy's prior conviction is inadmissible for impeachment purposes under Rule 609(a)(2). This ruling, however, is subject to reconsideration if it is demonstrated that the theft for which Abernathy was convicted actually involved an element of dishonesty or false statement, as under those circumstances, the Court would not have discretion to exclude the convictions. *See United States v. Morrow*, 977 F.2d 222, 228 (6th Cir. 1992).

Because Defendant has not sought to introduce evidence of Abernathy's shoplifting for any purpose other than impeaching her credibility, the Court declines to engage in a general Rule 403 analysis at this time.

### 4. Restraining Order Requiring Abernathy to Stay Away From Her Husband

Plaintiffs state that the restraining order arose when Abernathy caught her husband in a extra-marital affair and smacked him. The police were called and Abernathy's husband pursued charges which resulted in a restraining order. This restraining order prevented Abernathy from entering campus for several days because her husband was a student at CCI.

Plaintiffs argue this event is not relevant to the claims at issue because it was a purely personal matter. Defendant argues it would be relevant to rebut any allegation by Plaintiffs that CCI barred Abernathy from the entering campus in

retaliation for reporting DeFusco's sexual harassment.

As Plaintiffs do not appear to be arguing the bar from campus was a result of refusing DeFusco's sexual advances or in retaliation for reporting DeFusco's conduct, the Court sustains Plaintiffs' objection to the introduction of evidence concerning the restraining order.

### 5. Plaintiffs' or Witnesses' E-Mails and Other Communications That Contain Off-Color Remarks or Sexual Banter

Plaintiffs argue that emails and communications between Plaintiffs and/or other witnesses are not relevant to the quid pro quo or retaliation claims. Defendant argues these emails are relevant because they: (1) demonstrate Abernathy would not be offended by DeFusco's remarks or that they were not unwelcome; (2) question whether Plaintiffs had a good faith belief that similar comments by DeFusco constituted sexual harassment (an element of their retaliation claim); and (3) show Plaintiffs were violating CCI's computer policy by engaging in personal emailing while falling behind with work.

To prevail on a claim alleging quid pro quo sexual harassment, an employee must demonstrate:

(1) that the employee was a member of a protected class;

(2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors;

(3) that the harassment complained of was on the basis of sex;

(4) that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and

(5) the existence of respondeat superior liability.

*Palmer v. Cacioppo*, 429 F. App'x 491, 499 (6th Cir. 2011).[2]

Emails between Plaintiffs and co-workers other than DeFusco are not relevant to whether DeFusco's sexual advances were welcomed. First, Defendant has not argued or presented evidence which shows DeFusco was aware of these emails which were not sent to him. The emails then cannot be seen as an invitation for sexual propositions. Second, it is incorrect to state that jokes and explicit sexually charged discussions with some people invites sexual propositions from others. Accordingly, the emails at issue are not relevant to the issue of whether DeFusco's advances were unwelcome.

Similarly, the emails between Plaintiffs and co-workers which did not involve DeFusco do not tend to show that Plaintiffs' complaints about DeFusco were not in good faith. DeFusco's comments and propositions were of a different nature

---

[2] Defendant does not argue that the emails are relevant to Plaintiffs' retaliation claims. Nor would they be.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) she engaged in an activity protected by Title VII; (2) the defendant knew of the exercise of a protected right; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nonretaliatory reason for its action. *Harris v. Metropolitan Gov't Nashville and Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010). Once the defendant articulates a legitimate nonretaliatory reason for its action, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but was a mere pretext for retaliation. *Id.*

and caliber than what counsel has represented were contained in the emails. DeFusco is accused of requiring that Abernathy provide sexual favors in order to gain a promotion and commenting on and touching both Plaintiffs in a sexual manner. At most, Plaintiffs' emails demonstrate inappropriate discussions between co-workers. Accordingly, the emails at issue are also not relevant to whether Plaintiffs had a good faith belief in their complaints.

Finally, the emails between Plaintiffs and co-workers other than DeFusco show that Plaintiffs were engaging in personal emailing while at work. Defendant argues this is a fact of consequence to the determination of the action because CCI terminated Brown for performance reasons, not in retaliation for her complaints. The Court agrees personal emailing may be relevant to that fact. However, the probative value of the content of the emails to prove that point is minimal and the danger of unfair prejudice is high considering the x-rated tone of the emails. Accordingly, the danger of unfair prejudice substantially outweighs the probative value and the Court will sustain Plaintiffs' objection to the introduction of the emails content. Defendant may ask Plaintiffs if they sent personal emails during work and may even ask about the number of emails, but may not question about the content or introduce the emails into evidence.

Defendant states that it intends to introduce emails between Abernathy and DeFusco. Plaintiffs do not seek to exclude those emails. The motion expressly states that none of the emails Plaintiffs seek to suppress were sent to William

DeFusco.  Accordingly, the Court declines to consider the relevance of emails between Abernathy and DeFusco at this time.

### 6. Brown's Sexual Abuse

Plaintiffs state that the sexual abuse Brown suffered as a teenager is not relevant to her current claim of retaliation.  Defendant responds that it would only seek to introduce this evidence if Plaintiffs argued that Brown was entitled to damages for emotional distress caused by DeFusco's sexual harassment. Defendant argues it would offer the evidence of her sexual abuse to show not all Brown's emotional damage was caused by DeFusco.

It does not appear Plaintiffs will request damages for emotional distress. Accordingly, the Court sustains Plaintiffs' motion to exclude evidence of Brown's sexual abuse.

### 7. Brown's Breast Supplementation Surgery

Plaintiffs argue Brown never discussed her supplementation surgery with DeFusco, therefore, the surgery can have no relevance to her claims.  Defendant argues that because she exposed her breasts at work, the surgery is relevant to show Brown's attitude toward sexual matters and that she was not upset or distraught by DeFusco's advances.

Evidence of Brown's breast supplementation surgery is not relevant for the same reason the emails and communications which did not include DeFusco are not relevant to the claims at issue.  Plaintiffs' counsel explained that in her

deposition, Brown admitted to lifting her shirt in a women's restroom in the
presence of two female co-workers in order to show them the scars from her
surgery. Such activity does not indicate that Brown's complaint about DeFusco
was in bad faith. Accordingly, the Court sustains Plaintiffs' motion to exclude any
evidence regarding Brown's breast supplementation surgery, including the
incident in the restroom.

### 8. Renee Fall's Medical Condition

Renee Fall ("Fall") was the Director of Admissions and Brown's supervisor
at CCI. Brown alleges that she told Fall she felt uncomfortable attending a
baseball game in Cincinnati with DeFusco but that Fall encouraged her to go. Fall
has suffered from breast cancer and has undergone several surgeries. Defendant
represents that because Fall missed so much work, Fall and CCI made the mutual
decision to have Fall step down from Director of Admissions to Admission
Manager.

Plaintiffs argue Fall's medical condition is not relevant to the issues at hand.
Defendant asserts it will not raise the issue unless Plaintiffs argue that Fall was
demoted for some other reason. As Plaintiffs have not indicated that they intend
to so argue, the Court sustains Plaintiffs' motion to exclude the evidence on Fall's
medical condition because it does not tend to increase or decrease the probability
of a fact of consequence.

### 9. CCI's Policy on Sexual Harassment and Investigation

Plaintiffs argue that CCI's policy on sexual harassment and investigation into Plaintiffs' complaints are irrelevant because an employer is strictly liable for supervisor harassment that culminates in a tangible employment action.  Plaintiffs also argue that any statements made by DeFusco in the investigation are inadmissable hearsay.

Defendant responds the Plaintiffs will have to admit they never claimed to have been sexually harassed at the time the events allegedly occurred because they did not want to interfere with the possibility of advancement in the company. Defendant adds that Plaintiffs will have to admit they did not report other CCI employees who emailed them sexually explicit material.  At the hearing, Defendant argued that this evidence was crucial to showing Plaintiffs' understanding of sexual harassment and that Plaintiffs' did not comply with the policy by reporting DeFusco's or other co-workers' behavior.  Finally, Defendant argues that should Plaintiffs allege CCI was callous or dismissive of their allegations or did not take corrective action, Defendant should be entitled to rebut this allegation. [3]

Plaintiffs are correct that the *Ellerth/Faragher* affirmative defense is not available in this case.

---

[3] Defendant also argues [i]t is ludicrous that Plaintiffs would ask to exclude this evidence, as it is central to CCI's defense."  The Court does not consider whether the evidence is central to CCI's defense, only whether the evidence tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401.

> In *Faragher* [*v. Boca Raton*, 524 U.S. 775 (1998)], along with *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, decided the same day, the Court distinguished between supervisor harassment unaccompanied by an adverse official act and supervisor harassment attended by "a tangible employment action." *Id.,* at 765; accord *Faragher*, 524 U.S., at 808. Both decisions hold that an employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Ellerth*, 524 U.S., at 765; accord *Faragher*, 524 U.S., at 808. But when no tangible employment action is taken, both decisions also hold, the employer may raise an affirmative defense to liability, subject to proof by a preponderance of the evidence: "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S., at 765; accord *Faragher*, 524 U.S., at 807.

*Penn. State Police v. Suders*, 542 U.S. 129, 137 (2004) (parallel citations omitted).

Abernathy alleges she was denied a promotion and other benefits because she did not accept DeFusco's advances. "A tangible employment action constitutes a significant change in employment status" and includes denial of a raise or promotion. *Ellerth*, 524 U.S. at 761. Therefore, the *Ellerth/Faragher* affirmative defense is not available to Defendant on Abernathy's quid pro quo claim.

Defendant's first argument—that the evidence tends to show Plaintiffs' understanding of sexual harassment—does not demonstrate that the evidence is relevant. It is not clear to the Court why Plaintiffs' understanding of sexual harassment would be at issue other than, as Defendant argued in relation to the crude emails, it may go to their good faith belief in their eventual complaints

against DeFusco. As the Court has already noted, the dissimilar behavior by co-workers is not relevant to whether Plaintiffs had a good faith basis for complaining of DeFusco's actions.

Defendant's second argument—that Plaintiffs failed to comply with the policy—is equally as unavailing. It is DeFusco's non-compliance with the sexual harassment policy that is the issue in this case, not Plaintiffs' failure to report. Once again, not reporting dissimilar behavior by co-workers is not relevant to Plaintiffs' good faith in reporting DeFusco. The delay in reporting DeFusco can be addressed through questions that do not reference the policy or the investigation.

Even if the Court found evidence on the sexual harassment policy and investigation to be relevant, the Court would exclude the evidence on the basis that its probative value would be substantially outweighed by the danger of creating jury confusion. The jurors may be sympathetic to the fact that Defendant took action to address the problem. However, if Plaintiffs prove the elements of quid pro quo sexual harassment with a tangible employment action by DeFusco, CCI will be strictly liable for DeFusco's actions. Therefore, testimony about CCI's response will likely confuse the jury. The Court sustains Plaintiffs' motion to exclude all mention of CCI's sexual harassment policy and the investigation of Plaintiffs' complaints.

However, Defendant's last argument—that Defendant should be allowed to rebut allegations that it was unresponsive to Plaintiffs' complaints—may have

merit. Should Plaintiffs accuse Defendant of failing to respond to Plaintiffs'
concerns, Defendant may request at a sidebar conference that the Court
reconsider this ruling. Such reconsideration will be subject to the hearsay rules.

### 10. CCI's Policy on Destroying Handwritten Notes

Plaintiffs argue that Defendant should not be allowed to introduce evidence
of Defendant's policy of destroying handwritten notes in sexual harassment
investigations because when Plaintiffs' counsel questioned CCI's in-house
counsel about the policy, Defense counsel objected on the grounds of attorney-
client privilege and instructed the witness not to answer. Plaintiffs argue they are
disadvantaged in learning information about the policy.

Defendant states that it intends to present evidence about the policy
through witnesses from CCI's human resources department. Plaintiffs do not
argue that they were unable to depose those witnesses.

However, as noted above, evidence concerning the investigation is not
relevant to Plaintiffs' claims. Accordingly, the Court sustains Plaintiffs' motion to
exclude testimony about CCI's policy on destroying handwritten notes in sexual
harassment investigations on the ground that evidence of investigation policies is
not relevant to this case.

### 11. Adverse Inference for Destroying Handwritten Notes

Plaintiffs request that the Court instruct the jury to make an adverse
inference about the destruction of the handwritten notes and assume that such

evidence would have been favorable to Plaintiffs. Defendant argues the destruction of the notes was pursuant to a policy and the typewritten notes summarize all the handwritten notes, therefore no adverse inference is warranted.

As the Court has already granted Plaintiffs' motion to exclude evidence about the investigation of Plaintiffs' complaints, such an instruction would make little sense to the jury. Therefore, the Court denies Plaintiff's request to impose an adverse instruction for the destruction of the interview notes.

### 12. Claims Previously Dismissed

Plaintiffs seek to exclude any reference to the fact that Plaintiffs' hostile work environment claims were previously dismissed. Defendant had previously been granted summary judgment by the Franklin County Court of Common Pleas on state hostile work environment claims by these Plaintiffs. Plaintiffs included hostile work environment claims in this action but those claims were dismissed without opposition by Plaintiffs on the basis of res judicata. Defendant responds that it may reference that in the state case Plaintiffs also named DeFusco as a Defendant.

Defendant appears to be arguing that the prior state case is relevant because it tends to show that Plaintiffs could have also brought the current claims against DeFusco. This fact is not one of consequence to the determination of the case. Defendant is free to argue that Plaintiffs could have brought claims against DeFusco without referencing the previously dismissed claims. The Court sustains

Plaintiffs' motion to exclude mention of the previously dismissed claims.

## B. Defendant's Motion

### 1. Video and Transcript of Deposition of Rodney Tomczak

Defendant argues Plaintiffs should not be allowed to present the deposition testimony of Dr. Rodney Tomczak ("Dr. Tomczak"), a former employee of Defendant's, because he resides in Franklin County, Ohio and therefore is within the subpoena power of the Court.

Federal Rule of Civil Procedure 43 states "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safegaurds, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43.

Plaintiffs do not dispute that Dr. Tomczak has a residence in Franklin County and is therefore subject to the subpoena power of the court. See Fed. R. Civ. P. 45. Rather, Plaintiffs argue that Defendant previously agreed to allow the video deposition were Dr. Tomczak unavailable to testify, Defendant had a fair opportunity to cross examine him, and live testimony would be a second bite at the apple, and Dr. Tomczak is very busy and at times teaches overseas.

The first two arguments arise out Plaintiffs' sense that it would be unfair to allow Defendant to rescind its agreement and require Dr. Tomczak to testify live.

However, the preference for live testimony overrides any concerns about unfairness.  As the United States Court of Appeals for the Sixth Circuit has noted in the criminal context, in a video deposition

> the jury and the judge never actually see the witness.  The witness is not confronted in the courtroom situation.  The immediacy of a living person is lost.  In the most important affairs of life, people approach each other in person, and television is no substitute for direct personal contact.  Video tape is still a picture, not a life, and it does not come within the rule of the confrontation clause which insists on real life where possible, not simply a close approximation.

*Stoner v. Sowders*, 997 F.2d 209, 212–13 (6th Cir. 1993).  The importance of live testimony holds true in the civil context and motivates the rule that witnesses must testify live absent compelling circumstances.

Plaintiffs have not demonstrated those compelling circumstances here. Inconvenience of the witness is not compelling enough to allow the use of a video deposition.  *See Scozzari v. City of Clare*, No. 08–10997, 2012 WL 2003509, at *1 (E.D. Mich. June 5, 2012).  There are some circumstances where the cost and burden of obtaining the physical presence of a witness will be disproportionate to the importance of the expected testimony, but it is not clear to the Court whether those circumstances exist here.  The Court has not heard that Dr. Tomczak is definitely unwilling to appear during the January 2013 trial and/or specifically why he is unwilling.  In addition, compelling circumstances would lead to consideration of contemporaneous transmission, not automatic approval of the video deposition.

Therefore, the Court sustain's Defendant's motion to exclude Dr. Tomczack's deposition and the video of his deposition.

### 2. Deposition Transcript of Lawana Shipley

Lawana Shipley ("Shipley") was formerly a plaintiff in this case and the previous state case. Shipley was dismissed as a plaintiff in this case for failure to respond to the notice of deposition. Shipley's deposition was taken in connection with the former state case. Both parties are now unaware of her whereabouts.

Defendant requests that Shipley's deposition be excluded because Defendant did not question Shipley on all the issues relevant to the current claims. Plaintiffs respond that Defendant deposed Shipley on her quid pro quo claim and she is now unavailable for trial, and therefore Shipley's deposition should be admissible.

Federal Rule of Civil Procedure 32 states

At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

(A) the party was present or represented at the taking of the deposition or had notice of it;

(B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

(C) the use is allowed by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32(a)(1). Section (a)(4) of Rule 32 allows a party to use a deposition if the court finds that the party offering the deposition could not procure

the witness's attendance by subpoena.  Fed. R. Civ. P. 32(a)(4).

Defendant's counsel was present during the deposition of Shipley for the state court case.  There is no indication that the deposition will be used in a manner other than what would be admissible if she was testifying at trial.  Finally, as Plaintiffs' counsel made attempts to contact Shipley but still does not know her location, Plaintiffs' cannot procure her attendance by subpoena.  Accordingly, Shipley's deposition testimony is admissible, and the Court denies Defendants' motion to exclude it.

### 3. Evidence of Damages

Defendant seeks to exclude any evidence of Plaintiffs' damages because Plaintiffs' counsel has failed to provide quarterly disclosures of damages and costs, and the two reports that have been submitted have been very general.  In the alternative to exclusion, Defendant asks Plaintiffs be required to produce detailed invoices of attorney fees immediately.  Plaintiffs' counsel proposes in camera review of a certified summary of his attorneys fees.

Plaintiffs' counsel has now submitted that summary to the Court and the Court has disclosed the total cost of Plaintiffs' attorneys fees to Defendant.  The Court, therefore, views this matter as moot and denies Defendant's motion to exclude evidence of damages.

### 4. Potentially Cumulative Testimony

Plaintiffs' witness list includes twenty-one witnesses who will testify on their

own job performance and work history with Defendant. Defendant avers these witnesses are all offered in order to show that other employees who did not meet the job expectations were not fired. Defendant submits that twenty-one witnesses on this point would be unnecessarily cumulative. Plaintiffs' counsel indicates he is willing to pare down the number and alert Defendant's counsel to the final list. The Court is confident that the parties can resolve this matter without further ruling.

## C. Motion to Quash Subpoena

Defendant moves to quash the subponea of CCI's in-house counsel, Andrew Ainsworth ("Ainsworth"), on the grounds that any relevant testimony from Ainsworth would be protected by the attorney-client privilege. Defendant expects Ainsworth to be questioned on CCI's policy on destroying handwritten notes in sexual harassment investigations. Comments from Plaintiffs' counsel at the hearing confirmed this expectation.

As evidence regarding CCI's policy on destroying handwritten notes has been excluded, there is no need for Ainsworth to appear to testify. Accordingly, the Court grants Defendant's motion to quash the subpoena.

## III. CONCLUSION

For the reasons stated above, the Court **SUSTAINS** Plaintiffs' motion, ECF No. 89, as to the evidence of Abernathy's addiction to pain killers, theft of pain killers, and subsequent loss of her nursing license, witness Brenda Brown's reference to missing medications, Abernathy's shoplifting arrest, the restraining

order against Abernathy by her husband, Plaintiffs' and other witnesses' off-color remarks in emails and other communications, Brown's past sexual abuse, Brown's breast supplementation surgery, CCI's policy on sexual harassment and investigation into Plaintiffs' complaints, and CCI's policy on destroying handwritten notes. The Court **DENIES** Plaintiffs' request for an adverse inference instruction.

The Court **SUSTAINS** Defendants' motion, ECF No. 99, as to the video deposition of Dr. Rodney Tomczak, **DENIES** Defendant's motion as to Lawana Shipley's deposition and Plaintiffs' evidence of damages, and finds **MOOT** Defendants' request to limit witnesses. The Court **GRANTS** Defendant's motion to quash the subpoena of Andrew Ainsworth, ECF No. 105.

For the reasons stated in Footnote One, the Court finds **MOOT** ECF No. 69, ECF No. 72, ECF No. 79, and ECF No. 83.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**