IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


TRACY ABERNATHY, *et al.*,

               Plaintiffs,

    vs.                                 Civil Action 2:10-CV-131
                                 Judge Watson
                                 Magistrate Judge King


CORINTHIAN COLLEGES, INC.,

               Defendant.


<u>REPORT AND RECOMMENDATION</u>

Upon referral from the assigned District Judge for issuance of a report and recommendation, ECF 193, this matter is before the Court on *Plaintiff's Motion for an Award of Attorneys Fees, Costs and Prejudment [sic] Interest*, ECF 167 ("*First Motion for Fees*"), *Plaintiff's Motion for Leave to Supplement Instanter Motion for Attorney's Fees, Costs and Prejudgment Interest*, ECF 169 ("*Second Motion for Fees*"), and *Third Motion for Leave to Supplement Instanter Motion for Attorney's Fees, Costs and Prejudgment Interest*, ECF 195 ("*Third Motion for Fees*") (collectively, "the three motions for fees"). For the reasons that follow, it is **RECOMMENDED** that the three motions for fees be **GRANTED in part and DENIED in part**.

I.    BACKGROUND

As an initial matter, the Court notes that the parties refer multiple times to various filings and rulings throughout this litigation and throughout a related state court action as the bases for granting, or limiting, the request for fees and expenses in this

1

case. Accordingly, the Court will recite the relevant procedural history necessary to address the parties' arguments related to the pending motions.

**A.    Procedural History in the State Court Action**

On June 5, 2009, Tracy Abernathy, Lawana Shipley and Jennifer Brown filed a complaint in the Court of Common Pleas for Franklin County, Ohio ("the state court"), against Corinthian Colleges, Inc., ("Corinthian") and William DeFusco, the president of Corinthian's Gahanna, Ohio, location, alleging *quid pro quo* sexual harassment, hostile work environment sexual harassment, negligent supervision and negligent retention. *Tracy Abernathy, et al. v. Corinthian Colleges, Inc., et al.*, 09CVH 6 8483 ("the state court action" or "09CVH 6 8483"). *Appendix A: Procedural History of State and Federal Court Cases*, p. 1, attached to *First Motion for Fees* ("*Appendix A*"); *Answer of Defendant Corinthian Colleges, Inc.*, filed on July 28, 2009, in 09 CVH 6 8483; *Answer of William DeFusco*, filed on August 19, 2009, in 09 CVH 6 8483;[1] *Defendant's Memorandum Contra Plaintiff Abernathy's Motion for Attorneys Fees, Expenses, and Costs*, ECF 182, p. 14 ("*Memo.*

---

[1] With one or two exceptions, neither the *Appendix* nor the parties' briefs provide supporting citations to the state court filings or attach copies of these motions, briefs or orders filed in the state court action. Doing so would have been helpful to the Court and obviated the need for this Court to search through the filings in the state court action to understand the state court rulings and events to which the parties refer when litigating the request for fees. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . .can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *McGehee v. United States Army Corps of Engineers*, No. 12-5112, 508 F.App'x 368, at *370 (6th Cir. Dec. 10, 2012) (taking judicial notice of state court filings, observing that such filings "are public records and properly noticed").

*Contra*").[2]  On May 19, 2010, the state court denied plaintiffs' motion
for leave to amend their complaint to add a retaliation claim.
*Decision and Entry Denying Plaintiffs' Motion for Leave to Amend*
*Complaint, Filed April 8, 2010*, filed on May 18, 2010, in 09CVH 6
8483.  In reaching this decision, the state court reasoned the
following:

> Upon review, this Court finds that the plaintiffs have
> already filed retaliation claims in the Southern District
> of Ohio as of February 16, 2010.  (*Abernathy et al. v.*
> *Corinthian Colleges, Inc.*, case 2:10-cv-00131).  Because no
> answer has been filed in federal court, the plaintiffs may
> amend their federal complaint without requesting leave of
> court.  (Defendants' memorandum contra, p. 2).
> Additionally, as the defendants note, given the plaintiffs'
> motion practice in this case and the potential that the
> retaliation conduct arose in Florida, any additional
> discovery necessary would cause undue cost and delay.  This
> Court has held three status conferences with the parties
> due to the ongoing discovery and communication issues in
> order to help facilitate judicial economy, however, the
> plaintiffs' motions practice and the continued lack of
> cooperation constitute bad faith, and therefore, this Court
> finds that the plaintiffs' motion for leave to amend their
> complaint is not well-taken, and it is hereby DENIED.

*Id.* at pp. 2-3.

On July 26, 2010, counsel for the state court defendants moved to
withdraw from representation of defendant DeFusco, contending, *inter*
*alia*, that defendant DeFusco had failed to fully participate in the
state court action:

> At the onset of this case, Defendant William DeFusco agreed
> to participate fully in the litigation, to appear when
> necessary, and to communicate with counsel throughout.  To
> date, he has failed to provide counsel with any address

---

[2] Defendant mistakenly filed the wrong brief in opposition to the *First Motion*
*for Fees*.  *See Defendant Corinthian College's Memorandum Contra Plaintiffs'*
*Motion in Limine and Motion for Adverse Inference*.  ECF 180.  Thereafter,
defendant filed the correct *Memo. Contra*, ECF 182.  For ease of reference,
the Court will refer to the page numbers at the bottom of the page when
referring to this brief.

other than an email, a cell phone number, and an Extended-
Stay hotel.  He has promised to appear for deposition on
several occasions, always cancelling at the last minute,
due to weather, lack of funds, or alleged health issues.
In short, Mr. DeFusco has failed to honor his agreement and
has made it impossible for counsel to offer a defense on
his behalf.

*Motion of Counsel to Withdraw from Representation of Defendant William
DeFusco*, p. 2, 09 CVH 6 8483 (July 26, 2010).  The state court granted
counsel's motion to withdraw from the representation of defendant
DeFusco.  *Entry*, 09 CVH 6 8483 (July 27, 2010).  Thereafter, the
state court granted plaintiffs' motion to compel the depositions of
defendant DeFusco and another witness, Barbara Gibson, ordering these
witnesses to appear for deposition at the times specified by the
plaintiffs.  *Order Granting Plaintiffs' Motion Compelling Depositions
of William DeFusco and Barbara Gibson*, 09 CVH 6 8483 (August 26,
2010).

Defendant Corinthian Colleges, Inc., filed a motion for partial
summary judgment, which the state court granted in part and denied in
part on December 10, 2010.  *Motion for Partial Summary Judgment of
Defendant Corinthian Colleges, Inc.*, 09 CVH 6 8483 (September 8,
2010); *Decision and Entry Granting in Part and Denying in Part
Defendant's Motion for Summary Judgment, Filed September 8, 2010*, 09
CVH 6 8483 (September 8, 2010).  Specifically, the state court granted
the motion as to the hostile work environment sexual harassment claim,
but denied the motion as to the claims alleging *quid pro quo* sexual
harassment and negligent retention and supervision.  *Id*.  The matter
was scheduled for trial beginning January 31, 2011.  *Entry*, 09 CVH 6
8483 (January 11, 2011).

4

The plaintiffs in the state court action filed their final pretrial statements in late January 2011, identifying 19 individuals who were expected to testify, including Heather Graham, Billie Barz, Dineen Merchant, Renee Fall and Pamela LeMaster. *Plaintiffs' Final Pretrial Statement*, 09 CVH 6 8483 (January 21, 2011). Pursuant to Local Rule 9.07 of the Rules of Practice of the Franklin County Court of Common Pleas, plaintiffs tendered a security deposit in the amount of $300.00 to be applied toward the costs associated with the impaneling of a jury in the state court action. *Notice of Jury Deposit*, 09 CVH 6 8483 (January 21, 2011).

On January 31, 2011, the state court continued the trial date to April 4, 2011. *See Plaintiffs' Motion to Continue Trial Date*, p. 2, 09 CVH 6 8483 (March 25, 2011). Approximately one week prior to that date, plaintiffs moved to continue the trial date, representing that the current date would impose undue financial hardship on plaintiff Abernathy. *Id*. at 2-3. On March 30, 2011, and before the state court ruled on plaintiffs' motion to continue, plaintiffs voluntarily dismissed the state court action without prejudice. *Notice of Voluntary Dismissal*, 09 CVH 6 8483 (March 30, 2011).

**B.  Procedural History in the Federal Action**

On February 16, 2010, Tracy Abernathy and Lawana Shipley filed this action against Corinthian, asserting claims of sexual harassment and retaliation under Title VII, 42 U.S.C. § 2000e-5. *Complaint*, ECF 2. Plaintiffs later filed the *First Amended Complaint*, ECF 11 ("*Amended Complaint*"), adding plaintiff Jennifer Brown as a plaintiff and asserting a retaliation claim on her behalf. *Id*. Plaintiffs

5

alleged, *inter alia*, that DeFusco had subjected plaintiffs to unwelcome sexual harassment in the form of sexual advances and requests for sexual favors. *Amended Complaint*, ¶¶ 9-18. Plaintiffs also alleged that, after notifying defendant of DeFusco's misconduct, defendant retaliated against plaintiffs by terminating the employment of plaintiffs Abernathy and Brown and by placing plaintiff Shipley on a performance improvement plan. *Id*. at ¶¶ 19-27.

Following an October 6, 2010, preliminary pretrial conference, held pursuant to the provisions of Fed. R. Civ. P. 16, this Court issued an order requiring, *inter alia*, that plaintiffs "provide to defense counsel, by December 31, 2010, and quarterly thereafter, a statement of attorney fees and expenses incurred to date." *Preliminary Pretrial Order*, ECF 8, p. 2. The Court also specifically noted that a "related case is pending in state court." *Id*.

On April 10, 2012, this Court dismissed the claims of plaintiff Shipley after she had abandoned her pursuit of this litigation. *Report and Recommendation*, ECF 61; *Order*, ECF 63. A final pretrial conference and trial were scheduled for December 18, 2012 and January 7, 2013, respectively. *Second Amended Order Setting Trial Date*, ECF 88. On December 9, 2012, plaintiffs identified as witnesses at trial, *inter alios*, Heather Graham and Renee Fall. ECF 95, pp. 1-2.

The parties engaged in a Court-ordered mediation on August 22, 2013, *Notice*, ECF 84, which did not resolve the dispute. Thereafter, plaintiffs filed a motion *in limine* to exclude from evidence, *inter alia*, defendant's sexual harassment policy as well as the investigation and response to plaintiffs' sexual harassment claims.

ECF 89.  On December 10, 2012, Defendant also moved *in limine* to exclude, *inter alia*, former plaintiff Shipley's testimony.  ECF 99, p. 4.  Defendant argued in support of that motion that, although she had been deposed in the state court action regarding alleged hostile work environment, former plaintiff Shipley had not been deposed regarding the facts underlying the *quid pro quo* claim in the federal case.  *Id.* This Court, finding that defendant's policy and investigation were not relevant and that the probative value of such evidence would be substantially outweighed by the danger of jury confusion, sustained defendant's motion "to exclude all mention of CCI's sexual harassment policy and the investigation of Plaintiffs' complaints."  *Opinion and Order*, ECF 116, p. 16.  However, this Court rejected defendant's request to exclude former plaintiff Shipley's testimony, reasoning that defendant had been represented at her deposition in the state court case and that plaintiffs could not secure her live testimony at trial because her whereabouts were then unknown.  *Id.* at 21-22.

On December 17, 2012, the parties filed proposed pretrial orders. ECF 100, 103.  Plaintiffs identified as witnesses, *inter alios*, Heather Graham, Billie Barz, Renee Fall and Michelle McCormick.  ECF 103, p. 4.  Plaintiffs also filed the depositions of plaintiff Brown and former plaintiff Shipley on December 26, 2012.  ECF 107, 109, 114.

On January 5, 2013, *i.e.*, the Saturday before the trial was scheduled to commence on Monday, January 7, 2013, at 9:00 a.m., defendant filed a motion to dismiss the federal action, taking the position that the Court lacked jurisdiction to consider plaintiff Abernathy's *quid pro quo* claim and asking, in the alternative, to

limit this plaintiff's claim to the charge presented to the Equal Opportunity Commission ("EEOC"). ECF 121.[3] More specifically, defendant argued that the Court lacked jurisdiction over the *quid pro quo* claim because plaintiff Abernathy's EEOC charge, which "served as the basis for subject matter jurisdiction for Abernathy's *quid pro quo* claim in this case[,]" *id.* at 3-4, did not refer to a denial of promotion. *Id.* "Because Plaintiff Abernathy did not fulfill the administrative prerequisite for bringing a claim for *quid pro quo* sexual harassment in this court," defendant argued that the Court must dismiss her claim. *Id.* at 4.

In light of defendant's motion, the trial did not begin on January 7, 2013. *Opinion and Order*, ECF 127, pp. 3-4. Instead, the Court ordered the parties to brief the issues raised by defendant. *Cf*. *id.* at 3-4. In its reply brief, however, defendant conceded that plaintiff Abernathy's failure to timely or correctly file a charge with the EEOC did not call into question the Court's jurisdiction. ECF 126, pp. 1-3. In later denying defendant's motion, the Court noted that defendant had not raised plaintiff Abernathy's failure to exhaust administrative remedies in its answer to the *Amended Complaint*. ECF 127, p. 6. The Court also concluded that defendant's unjustified challenge to jurisdiction less than 48 hours prior to the commencement of trial prejudiced plaintiff Abernathy. *Id.* at 7-9. The Court went on to find that defendant's faulty challenge to the

---

[3] Defendant also represented that plaintiff's counsel had advised on January 5, 2013, that plaintiffs would not pursue any retaliation claims, leaving only plaintiff Abernathy's *quid pro quo* sexual harassment claim. *Id.* at 2 (citing *Exhibit 1*, attached thereto (email dated January 5, 2012, from plaintiffs' counsel to defense counsel)). *See also* ECF 125, p. 1 n.1 (notifying Court that plaintiffs will not pursue plaintiff Brown's retaliation claim).

Court jurisdiction "led the Court to postpone the trial when the parties, witnesses, and jury were present and prepared to proceed with trial." *Id*. at 9. The Court ordered defendant to show cause why sanctions should not be imposed under Rule 11(b)(1) of the Federal Rules of Civil Procedure. *Id*. Ultimately, the Court declined to impose monetary sanctions but admonished defendant and defense counsel. *Opinion and Order*, ECF 131. Plaintiff Abernathy's *quid pro quo* sexual harassment and retaliation claims were scheduled for trial beginning August 5, 2013. *Order*, ECF 133.

On August 1, 2013, the Court held a final pretrial conference, *Order*, ECF 137, p. 3, during which defendant verbally opposed plaintiffs' written motion to introduce the deposition transcripts of Billie Barz and Dineen Merchant and to introduce the affidavit of Pamela King in lieu of live testimony at trial, ECF 139. *Order*, ECF 145, pp. 2-4. Invoking Rules 404(b) and 403 of the Federal Rules of Evidence, defendant also asked the Court to exclude the testimony of Billie Barz, Dineen Merchant, Lawana Shipley, Jennifer Brown and Renee Fall. *Id*. Defendant also asked the Court to reconsider its previous ruling regarding the investigation into plaintiff Abernathy's complaint. *Id*. at 5. The Court denied plaintiff's motion to admit the depositions and affidavit in lieu of live trial testimony and granted defendant's oral motion to exclude the testimony of Billie Barz, Dineen Merchant, Lawana Shipley, Jennifer Brown and Renee Fall to the extent that their testimony pertained to sexual harassment against individuals other than plaintiff Abernathy. *Id*. at 4, 6. The Court also denied defendant's request to reconsider its prior ruling

regarding the investigation into plaintiff Abernathy's complaint. *Id*. at 5 ("The Court stated from the bench it stands by its previous rulings on this subject.").

Plaintiff Abernathy's *quid pro quo* sexual harassment and retaliation claims proceeded to trial before a jury beginning on August 5, 2013. *Opinion and Order*, ECF 131, p. 7; *Minute Entry*, ECF 151, 152, 154, 155, 156, 162.  On the first day of trial, the Court granted defendant's request  to exclude evidence of its sexual harassment policy and investigation of DeFusco.  ECF 145, p. 5.

The jury returned a verdict against plaintiff Abernathy on her claim of *quid pro quo* sexual harassment but found in her favor on the retaliation claim and awarded $3,500 in compensatory damages. *Jury Verdict Forms*, ECF 157.  On August 14, 2013, the Clerk entered judgment in favor of plaintiff Abernathy in the amount of $3,500 with interest at the rate of 12%. *Clerk's Judgment*, ECF 162.  Plaintiff Abernathy appealed this judgment, ECF 165, and defendant filed a cross-appeal, ECF 166.

While the appeals were still pending, plaintiff Abernathy filed her *First Motion for Fees* pursuant to 42 U.S.C. § 1988, seeking attorney's fees in the amount of $178,750.00, expenses in the amount of $11,621.55.00, and prejudgment interest on the $3,500.00 jury verdict. *First Motion for Fees*, p. 16.  Shortly thereafter, she filed her *Second Motion for Fees*, revising her request for expenses to $15,363.88. *Id*. at 2.  Defendant concedes that plaintiff Abernathy, as a prevailing party, is entitled to some award of fees and expenses, but opposes this plaintiff's present demand as excessive. *Memo*.

10

*Contra*.  Plaintiff thereafter filed her *Reply Memorandum in Support of Motion for an Award of Attorney's Fees, Costs and Prejudgment Interest*, ECF 186 ("*Reply*").  The Court stayed consideration of plaintiff Abernathy's *First Motion for Fees* and *Second Motion for Fees* pending resolution of the parties' appeals.  *Order*, ECF 189.

On July 23, 2014, the United States Court of Appeals for the Sixth Circuit rejected defendant's cross-appeal on the retaliation claim and affirmed the judgment of this Court.  *USCA Opinion*, ECF 192;[4] *Mandate*, ECF 194.  On August 7, 2014, the assigned District Judge referred the *First Motion for Fees* and *Second Motion for Fees*, to the undersigned for report and recommendation.  *Order*, ECF 193.  Following that referral, plaintiff Abernathy filed the *Third Motion for Fees*, which defendant opposes.  ECF 197.[5]

## II.  STANDARD

Plaintiff Abernathy seeks attorney's fees and expenses under 42 U.S.C. § 1988.  This statute provides that a court has discretion to award a prevailing party, other than the United States, a reasonable attorney's fee.  42 U.S.C. § 1988(b).  "Congress enacted the statute as an exception to the general rule in our legal system that parties are required to pay their own attorney's fees 'in order to ensure that federal rights are adequately enforced.'"  *Binta B. v. Gordon*, 710 F.3d 608, 627 (6th Cir. 2013) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 1671 (2010)).  A "reasonable" attorney's fee is therefore a fee that is "adequately compensatory to

---

[4] Plaintiff voluntarily dismissed her appeal.  *Id.* at PAGEID#:3815.
[5] Although defendant, without explanation or justification, filed its response after the deadline ordered by the Court, *see Order*, ECF 196, the Court will nevertheless consider defendant's belated filing.

attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). Determination of an appropriate fee award, however, "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1982). Accordingly, where a moving party has an opportunity "to provide a detailed explanation of costs," a court need not provide that party with additional opportunities to provide documentation in support of a fee request. *See*, *e.g.*, *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, No.: 2:08-cv-00492, 2014 U.S. Dist. LEXIS 8303, at *5-6 (S.D. Ohio Jan. 22, 2014) (overruling objection that plaintiff should have had an additional opportunity to provide documentation to substantiate its fee request).

"Although § 1988 uses permissive language regarding fee awards, 'the Supreme Court has read [§ 1988] as mandatory where the plaintiff prevails and special circumstances are absent.'" *Hescott v. City of Saginaw*, Nos. 12-2103/2153, 2014 U.S. App. LEXIS 12489, at *8 (6th Cir. July 2, 2014) (quoting *Déjà Vu v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 421 F.3d 417, 420 (6th Cir. 2005)). "'Prevailing party' is a legal term of art designating 'one who has been awarded some relief by the court. . . .'" *Binta B.*, 710 F.3d at 620 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001)). *See also Green Party of Tenn. v. Hargett*, Nos. 13-5975/6280, 2014 U.S. App. LEXIS 16207, at *38 (6th Cir. Aug. 22, 2014) ("To be considered a prevailing party, a litigant must have "'receive[d] at least some relief on the merits of his claim' amounting to 'a court-ordered change in the legal

relationship between the plaintiff and the defendant.'") (quoting
*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human
Res.*, 532 U.S. 598, 603-04 (2001)).  "Success on a single claim is
sufficient to become a prevailing party."  *Id.* (citing *McQueary v.
Conway*, 614 F.3d 591, 603 (6th Cir. 2010)).

"Reasonable" attorney's fees are calculated in light of the
prevailing market rates in the relevant community.  *Binta B.*, 710 F.3d
at 627.  In determining a reasonable fee award, a court begins by
calculating the movant's "lodestar," "which is the proven number of
hours reasonably expended on the case by an attorney, multiplied by a
reasonable hourly rate."  *Id.* (quoting *Isabel v. City of Memphis*, 404
F.3d 404, 415 (6th Cir. 2005)).  It follows that hours that are
"excessive, redundant, or otherwise unnecessary," *i.e.*, hours that are
not "reasonably expended," should be excluded from the initial fee
calculation.  *Id.* at 627-28 (internal quotation marks and citations
omitted).  Once the initial lodestar calculation is determined, the
district court may modify the award in light of "relevant
considerations peculiar to the subject litigation."  *Adcock-Ladd*, 227
F.3d at 349 (citations omitted).

Finally, a district court must "provide a concise but clear
explanation of its reasons for the fee award."  *Hensley*, 461 U.S. at
437.  While a district court's discretion in determining a statutory
fee award under Section 1988 is not absolute, it is entitled to
substantial deference.  *Binta B.*, 710 F.3d at 628.

## III.  DISCUSSION

In the case presently before the Court, defendant does not dispute the reasonableness of the requested hourly rate, *see Memo. Contra*, pp. 1-3, but argues that plaintiff Abernathy's demand for attorney's fees and for costs is nevertheless unreasonable.  The Court will address both the requested hourly rate and defendant's challenges to the hours expended.

### A.    Reasonable Hourly Rate

Plaintiff Abernathy's counsel argues that his hourly rate of $250.00 is a reasonable rate for legal counsel with similar experience in central Ohio.  *First Motion for Fees*, pp. 8-9 (citing *Affidavit of John S. Marshall*, attached thereto as *Exhibit G* ("*Marshall Affidavit*")).  *See also Affidavit of Rayl L. Stepter, Esq.*, ¶ 4, attached as *Exhibit A* to *First Motion for Fees* ("*Stepter Affidavit*").  Defendant concedes that a $250.00 hourly rate is reasonable.  *Memo. Contra*, p. 1.

This Court agrees with the parties that an hourly rate of $250.00 is reasonable in this case.  As noted *supra*, it is the prevailing market rates in the relevant community that determine the reasonableness of a requested hourly rate.  *See Binta B.*, 710 F.3d at 627.  Plaintiff's counsel has practiced employment law for approximately twenty (20) years.  *Stepter Affidavit*, ¶ 2.  He is a certified specialist in this area of law and has received statewide recognition of his peers.  *Id*.  Attorney Stepter's hourly rate during this litigation was $250.00.  *Id*. at ¶ 4.  In support of his position that the requested hourly rate is reasonable, Attorney Stepter offers

14

the *Marshall Affidavit*.  Attorney Marshall,[6] who has an hourly billing rate of $450.00, is familiar with the hourly rates charged by lawyers in Columbus and the rates charged by counsel litigating in Ohio federal courts.  *Marshall Affidavit*, ¶¶ 6, 9.  He has previously testified as to the market rates for attorneys in central Ohio.  *Id*. at ¶ 5.  Attorney Marshall, having reviewed Attorney Stepter's *curriculum vitae* and the docket in this case, avers that Attorney Stepter's hourly rate of $250.00 is below market rates for counsel with similar levels of skill and experience in central Ohio.  *Id*. at ¶¶ 7, 9.  Similarly, a survey of other awards in attorney's fees cases in this district indicates that a $250.00 hourly rate falls within the range of billable rates previously approved in civil rights actions.  *See Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, No. 2:08-cv-00492, 2014 U.S. Dist. LEXIS 151691, at *17-21 (S.D. Ohio Oct. 22, 2013)(recommending, *inter alia*, a $250.00 hourly rate for experienced counsel), *sustained in part and overruled in part by Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, No. 2:08-cv-00492, 2014 U.S. Dist. LEXIS 8303, at *6-7 (S.D. Ohio Jan. 22, 2014) (approving and adopting, *inter alia*, a recommended hourly rate of $250.00 for counsel); *ABC v. Brunner*, No. 1:04-cv-750, 2008 U.S. Dist. LEXIS

---

[6] Attorney Marshall has practiced primarily in the area of civil rights and employment litigation since he was licensed to practice law in the State of Ohio in November 1983.  *Marshall Affidavit*, ¶¶ 1-2.  He was one of the first lawyers in Ohio to be certified by the Ohio State Bar Association as a specialist in Labor and Employment Law and is currently serving a four-year term on the Ohio State Bar Association Employment Law Specialty Board.  *Id*. at ¶ 2.  Attorney Marshall has extensive litigation experience in the areas of civil rights and employment discrimination and has been recognized for his legal accomplishments and expertise.  *Id*. at ¶¶ 3-4.

15

119364, at *36-37 (S.D. Ohio Sept. 30, 2008) ($380.00 hourly rate for
a 20 year litigation partner); *Cook v. City of Norwood*, 2005 U.S.
Dist. LEXIS 46038, at *22-23 (S.D. Ohio Sept. 27, 2005) (finding an
hourly rate of $225.00 reasonable for an attorney who practiced
primarily employment law for nearly 30 years). This evidence and
authority persuade the Court that Attorney Stepter's $250.00 hourly
rate is reasonable in this case.  Accordingly, it is **RECOMMENDED** that
$250.00 be accepted as an appropriate market rate for Attorney
Stepter's legal work.

   B.   **Reasonableness of the Hours Billed**

      Having determined the appropriate hourly rate, the Court now
considers the number of hours reasonably expended, excluding from the
lodestar calculation hours that are "excessive, redundant, or
otherwise unnecessary," *i.e.*, hours that are not reasonably expended.
*See Binta B.*, 710 F.3d at 627-28. The party moving for an award of
fees has the burden of establishing entitlement to the requested
award.  *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999).  A "fee
applicant (whether a plaintiff or a defendant) must . . . submit
appropriate documentation to meet 'the burden of establishing
entitlement to an award.'"  *Fox v. Vice*, _ U.S. _, 131 S. Ct. 2205,
2216 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. at 437). *See also
Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 552 (6th Cir. 2008)
("Attorneys who seek fees have an obligation 'to maintain billing time
records that are sufficiently detailed to enable courts to review the
reasonableness of the hours expended' on the case.") (quoting
*Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir.

16

1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc.
v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 121 S. Ct.
1835, 149 L. Ed. 2d 855 (2001)).  Therefore, "'[w]here the
documentation of hours is inadequate, the district court may reduce
the award accordingly.'"  *Reed*, 179 F.3d at 472 (quoting *Hensley*, 461
U.S. at 433).  In making this determination, "[t]he essential goal in
shifting fees (to either party) is to do rough justice, not to achieve
auditing perfection.  So trial courts may take into account their
overall sense of a suit, and may use estimates in calculating and
allocating an attorney's time." *Fox*, 131 S. Ct. at 2216.

> **1.   Required quarterly disclosure of fees and expenses**

Defendant first argues that the Court should deny the request for
fees because plaintiff Abernathy failed to provide quarterly fee and
expense statements. *Memo. Contra*, pp. 10-12.  On October 6, 2010,
this Court directed plaintiffs to "provide to defense counsel, by
December 31, 2010, and quarterly thereafter, a statement of attorney
fees and expenses incurred to date." *Preliminary Pretrial Order*, ECF
8, p. 2.  Attorney Stepter apparently provided summaries of fees and
expenses to defendant on February 14, 2012 and on June 8, 2012. *See
Exhibit A-2* ("[F]rom the period of September 1, 2011 through December
31, 2011, 10.1 hours of time was spent at the rate of two hundred
fifty dollars ($250.00) per hour.  For the entire case, 281.4 hours of
time have been spent in pursuit of all claims, including the Title VII
claims."), attached to *Memo. Contra; Exhibits A-3, A-4* (letter and
invoice reflecting "326 hours spent to date @ $250 an hour" and
expenses of $5766.03) as well as estimates of damages suffered by

plaintiffs Brown and Abernathy), attached to *Memo. Contra*.  The
parties apparently disagreed as to the appropriate level of detail in
the quarterly statements required by the *Preliminary Pretrial Order*,
but did not contact the Court to resolve any such disagreement.  *See
Exhibits A-5, A-6, A-7; Exhibit 1*, attached to *Reply*.

        Defendant filed a motion *in limine* seeking to exclude, *inter
alia*, "evidence of damages not detailed and disclosed to defendant."
*Defendant's Motion In Limine*, ECF 99, pp. 2-3.  In that motion,
defendant argued that plaintiffs had provided only "two generalized
damage summaries during the entire pendency of this case."  *Id*.
Defendant contended that plaintiffs' failure to provide appropriate
summaries prevented defendant from fully assessing its risk in this
case.  *Id*. at 3.  Plaintiff takes the position that the information
previously provided satisfied the requirements of the *Preliminary
Pretrial Order*.  ECF 101.  Plaintiff also represents that she offered
to submit documentation *in camera* to the undersigned or to the United
States Magistrate Judge who mediated the case, but that defendant did
not respond to that offer.  *Id*. at 6.

        On January 2, 2013, the Court noted that Attorney Stepter had
submitted a certified summary of attorney's fees and expenses to the
Court.  *Opinion and Order*, ECF 116, p. 22.  "The Court, therefore,
views this matter as moot and denies Defendant's motion to exclude
evidence of damages."  *Id*. In now opposing plaintiff Abernathy's
request for fees and expenses on this basis, defendant argues that she
"unreasonably refused to provide any detail to Defendant for the
purpose of evaluating risk in the context of settlement, and because

18

the billing records were not accurate or made concurrently with billable time incurred." *Memo. Contra*, p. 12. *See also id.* at 11 (arguing that the billing information provided to defendant was inaccurate because, *inter alia*, Attorney Stepter represented on February 14, 2012 that he had incurred 281.4 hours while "billing summaries," presumably those offered in support of the *First Motion for Fees*, reflect a total of only 264.4 hours by that date). In the alternative, defendant argues, the Court should deny recovery of fees incurred prior to February 14, 2012, and after September 8, 2012, because of plaintiff's failure to provide the quarterly statements required by the *Preliminary Pretrial Order*. *Id.* at 12.

As it did previously, *see Opinion and Order*, ECF 116, p. 22, this Court regards this issue as resolved in light of the denial of defendant's motion to exclude evidence of damages. Moreover, to the extent that defendant's argument in this regard may be construed as a request for a denial of fees based on "special circumstances," *i.e.*, a failure to provide quarterly statements, "[t]he Sixth Circuit has not found an instance where special circumstances justify denying fees under § 1988." *Contract Design Group, Inc. v. Wayne State Univ.*, No.: 2:10-cv-14702, 2014 U.S. Dist. LEXIS 112474, at *7-8 (6th Cir. Aug. 14, 2014). In short, defendant's request to deny the three motions for fees because of a failure to provide detailed quarterly fee statements is not well-taken.

### 2. Fees related to the claims of Jennifer Brown and Lawana Shipley

Plaintiff Abernathy's request for fees includes billings related to the claims of Jennifer Brown and Lawana Shipley. *See, e.g.,*

19

*Stepter Affidavit*, ¶¶ 5, 10; *Exhibit B*, pp. 1-2, 10-12, attached to
*Motion for Fees* ("*Billing Records*"). Defendant seeks to exclude these
fees because Ms. Brown and Ms. Shipley voluntarily elected not to
pursue their claims. *Memo. Contra*, pp. 12-13. Defendant also argues
that fees related to the depositions of Renee Fall, Pamela LeMaster,
Billie Barz and Deneen Merchant, who had no knowledge relevant to
plaintiff Abernathy's claims, should likewise be denied. *Id.* at 12,
16.

Section 1988 authorizes an award of fees to a prevailing party.
42 U.S.C. § 1988(b). "'Prevailing party' is a legal term of art
designating 'one who has been awarded some relief by the court . . .
.'" *Binta B.*, 710 F.3d at 620 (quoting *Buckhannon Bd. & Care Home,
Inc.*, 532 U.S. at 603). The "magnitude of the relief obtained" does
not alone determine whether or not a party qualifies as a prevailing
party. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). "'A plaintiff
crosses the threshold to 'prevailing party' status by succeeding on a
single claim, even if he loses on several others and even if that
limited success does not grant him the 'primary relief' he sought.'"
*McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010) (quoting *Texas
State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790-
91 (1989)). Nevertheless, if

> a plaintiff has achieved only partial or limited success,
> the product of hours reasonably expended on the litigation
> as a whole times a reasonable hourly rate may be an
> excessive amount. This will be true even where the
> plaintiff's claims were interrelated, nonfrivolous, and
> raised in good faith.

*Hensley v. Eckerhart*, 461 U.S. at 436.

20

In the case presently before the Court, Ms. Shipley's claims were dismissed on April 10, 2012, after she abandoned her pursuit of this litigation.  *Report and Recommendation*, ECF 61; *Order*, ECF 63.  Ms. Brown ultimately decided not to proceed to trial on her claim.  *See* ECF 121, p. 2; ECF 125, p. 1; *Opinion and Order*, ECF 127, p. 1, n.1. It was only plaintiff Abernathy's claims of *quid pro quo* sexual harassment and retaliation that proceeded to trial.  *Opinion and Order*, ECF 131, p. 7; *Minute Entry*, ECF 151, 152, 154, 155, 156, 162. The jury returned a verdict against plaintiff Abernathy on her claim of *quid pro quo* sexual harassment, but awarded her $3,500 in compensatory damages on the retaliation claim.  *Jury Verdict Forms*, ECF 157.  On July 23, 2014, after considering defendant's cross-appeal on the retaliation claim, the Sixth Circuit affirmed that judgment. *USCA Opinion*, ECF 192; *Mandate*, ECF 194.  Based on this record, Ms. Shipley and Ms. Brown are not prevailing parties, *i.e.*, the Court has awarded them no relief and they have not prevailed on the merits of any of their claims, *see Binta B.*, 710 F.3d at 620; *Hanrahan*, 446 U.S. at 758.

Insisting that she is entitled to fees incurred in connection with the claims abandoned by Ms. Shipley and Ms. Brown, plaintiff Abernathy raises a number of arguments, all of which are unavailing. First, plaintiff Abernathy's counsel has no idea why Ms. Shipley abandoned this litigation and notes that Ms. Brown did not abandon her claim until shortly before trial.  *Reply*, p. 8.  These observations miss the mark.  It is irrelevant why and when these plaintiffs abandoned their claims; the fact remains that Ms. Shipley and Ms.

Brown were awarded no relief, did not prevail on any claim, and are not entitled to recover fees under § 1988. *See Binta B.*, 710 F.3d at 620; *Hanrahan*, 446 U.S. at 758.

Second, and noting that "[t]he initial claims in the case involved a hostile working environment theory," *Reply,* p. 4,[7] plaintiff Abernathy contends that the work related to the claims of Ms. Shipley and Ms. Brown offer "other acts" evidence admissible in connection with a hostile work environment claim. *Id.* at pp. 4-5. According to plaintiff Abernathy, work performed in connection with those claims before they were dismissed by the state court on summary judgment is therefore properly billable. This argument again misses the mark. Plaintiff Abernathy concedes that the hostile work environment claim was dismissed and, as noted *supra*, all the state court plaintiffs voluntarily dismissed the remaining claims asserted in that action. Plaintiff Abernathy has not established that work related to the claims of Ms. Shipley and Ms. Brown also relates to her retaliation claim, *i.e.*, the only claim upon which she prevailed.

Third, plaintiff Abernathy contends that the work related to the claims of Ms. Shipley and Ms. Brown and performed after the dismissal of the hostile work environment claim by the state court is properly compensable to her because defendant did not move to exclude such "other acts" evidence until August 1, 2013, *i.e.,* four days before trial. *Reply*, p. 4. According to plaintiff Abernathy, this evidence was not "*per se* excludable," although she acknowledges that this Court

---

[7] In making this argument, plaintiff Abernathy referred to the complaint filed in the state court action but failed to provide a copy of that pleading. This Court was unable to independently retrieve the complaint.

ultimately ruled on August 5, 2013 that this evidence was inadmissible. *Id*. at 4-5; *Opinion and Order*, ECF 145. Moreover, plaintiff Abernathy contends that defendant should not be rewarded for filing a last-minute motion, particularly when it had notice earlier in the litigation of plaintiff's intent use this "other acts" evidence. *Reply*, pp. 4-5, 7. However, nothing in this argument alters the fact that this Court ruled that such evidence was inadmissible in support of plaintiff's claims at trial. In short, the time spent developing these claims is not properly includable in the initial fee calculation. *See Binta B.*, 710 F.3d at 627-28.

Plaintiff Abernathy speculates that work on the "other acts" evidence related to the claims of Ms. Shipley and Ms. Brown could have been necessary at trial. *See Reply*, pp. 6 (arguing that such evidence was necessary as "rebuttal evidence . . . [i]f evidence of Defendant's [sexual harassment] policy was introduced then instances where the policy was not followed would be admissible to refute its position"), 6-7 ("Thus, even though Plaintiffs did not do so, arguably, Plaintiff Abernathy could have requested that evidence of the sexual harassment investigations be submitted as evidence in order to rebut Defendant's attempts to go around the Court's ruling by hinting at an investigation"). What is clear is that this evidence was ruled inadmissible and was not admitted at trial. Plaintiff's speculation does nothing to change those facts. *See Binta B.*, 710 F.3d at 627-28.

Finally, plaintiff Abernathy argues that defendant "<u>waived its</u> <u>right</u>" to challenge time spent developing "other acts" evidence "<u>when</u> <u>it introduced evidence of its 'high standards' at</u> trial." *Reply*, p. 6

(emphasis in the original).  According to plaintiff Abernathy, she
"would have needed to have the evidence it acquired to rebut
Defendant's testimony should she have chosen to do so.  Even though
evidence is acquired but not used does not render the time spent in
acquiring it as non-compensable."  *Id*.  This Court disagrees.
Plaintiff Abernathy cites no authority for this proposition.  Instead,
the Sixth Circuit has held that only hours "reasonably expended,"
*i.e.*, hours that are not "excessive, redundant, or otherwise
unnecessary," should be included in the initial fee calculation.  *See*,
*e.g.*, *Binta B.*, 710 F.3d at 627-28.  By her own admission, this
evidence was not used at trial.  In short, plaintiff Abernathy's
request for fees related to the claims of Ms. Brown and Ms. Shipley,
including the depositions of individuals who had no knowledge relating
to plaintiff Abernathy's claims, *i.e.*, Renee Fall, Pamela LeMaster,
Billie Barz and Deneen Merchant, is not well-taken.  Accordingly, as
it relates to the request for fees relating to the claims abandoned by
Ms. Shipley and Ms. Brown, it is **RECOMMENDED** that the three motions
for fees be **DENIED**.

### 3.    Fees related to local travel time

Plaintiff Abernathy also seeks reimbursement for fees related to
her counsel's local travel time, which was initially billed at his
regular hourly rate. *See*, *e.g.*, *Billing Records*, pp. 2, 12-13 (billing
for, *inter alia*, travel to a status conference, final pretrial
conference and commute each day of trial). Defendant opposes this
request as well. *Memo. Contra*, p. 15 (complaining of local travel
time billed, but providing no authority as to proper rate, if any,

billed for such time).  At least one court in this district, considering a fee request under Section 1988, has concluded that it is inappropriate to charge the regular hourly rate for attorney time spent traveling.  *See*, *e.g.*, *Hickman v. Valley Local Sch. Dist. Bd. of Educ.*, 513 F. Supp. 659, 663 (S.D. Ohio 1981) ("We also noted a rather large number of hours spent in traveling, for which we do not consider it entirely appropriate for counsel to charge their full regular rate.").  *But see Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991) (refusing to reverse award for travel time billed at the regular hourly rate because "[w]e believe that matters of this sort are within the discretion given the district court, which has greater familiarity with local practice than does this court").

In the present case, plaintiff Abernathy - who bears the burden of supporting her request for fees — later took the position that travel time should be awarded at one-half of counsel's regular hourly rate and represented that her counsel "will revise the total amount of the award requested in order to account for this reduction." *Reply*, p. 13 (citing *BD v. DeBuono*, 177 F. Supp.2d 201, 204 (S.D. N.Y. 2001)).  However, no such revision was ever submitted to the Court. In any event, the Court is not persuaded by plaintiff's citation to authority from outside this Circuit.  First, the case relied upon by plaintiff relates - not to an award of attorney's fees - but to the reimbursement of expert fees.  Second, whether or not to compensate for local travel time is determined by the local practice in that regard.  *See*, *e.g.*, *Perotti*, 935 F.2d at 764.  Yet plaintiff Abernathy relies on the purported local practice of New York, not this area.

Because plaintiff Abernathy has failed to present any evidence upon which the Court can meaningfully determine how much, if any, of this local travel time is reasonably billable, it is **RECOMMENDED** that the three motions for fees be **DENIED** as to local travel time.

### 4. Fees related to state court action

Plaintiff Abernathy seeks to recover fees incurred in connection with the state court action. *See*, *e.g.*, *Stepter Affidavit*, ¶ 5; *Billing Records*, pp. 1-5. Defendant asks that these fees be excluded from any award. *Memo. Contra*, pp. 14-15. Plaintiff Abernathy contends that she should recover for work performed in the state court case because both cases share the same common core of facts. *Reply*, pp. 8-10.

"When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 421 F.3d 417, 423 (6th Cir. 2005). Because counsel will reasonably spend time on the entire litigation, which may have several claims arising from a common core of facts, it would be "difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley*, 461 U.S. at 435.

In the case presently before the Court, defendant apparently does not disagree that the state court action and plaintiff Abernathy's claims in this litigation arise from a common core of facts. *See Memo. Contra*, pp. 14-15. Instead, defendant seeks to exclude fees

26

arising from the state court action because plaintiffs purportedly
acted in bad faith in that litigation and because plaintiff Abernathy
chose to file two separate actions, "apparently for the sole purpose
of generating more attorney fees." *Id.* (citing, *inter alia*, *Exhibit
C-3*, *Decision and Entry Denying Plaintiffs' Motion for Leave to Amend
Complaint Filed April 8, 2010*, 09CVH 6 8483 (May 18, 2010)). Defendant
goes on to argue that "Plaintiff gave *no indication* that she intended
to seek fees in connection with this case until February 14, 2012."
*Id.* at 15 (emphasis in original).  Defendant's arguments are not well-
taken.  Other than its unsupported speculation, defendant offers no
evidence that plaintiff Abernathy filed two separate actions in two
separate courts simply to generate more attorney's fees.  Although the
state court, in denying plaintiffs' request to amend their state court
complaint, did comment that plaintiffs' "lack of cooperation
constitutes bad faith[,]" *Exhibit C-3*, p. 3, this comment does not
justify the complete denial of fees arising from a common core of
facts.  *Cf. Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604,
611 (6th Cir. 2004) ("But this court has rejected the argument that a
plaintiff's bad acts are special circumstances warranting the denial
of attorney fees.") (citations omitted).  Moreover, as was
demonstrated by the procedural history set forth *supra*, DeFusco's
refusal to cooperate throughout the state court litigation also
prolonged that litigation.  *See*, *e.g.*, *Motion of Counsel to Withdraw
from Representation of Defendant William DeFusco*, p. 2, 09 CVH 6 8483
(July 26, 2010); *Entry*, 09 CVH 6 8483 (July 27, 2010) (granting motion
to withdraw); *Order Granting Plaintiffs' Motion Compelling Depositions*

*of William DeFusco and Barbara Gibson*, 09 CVH 6 8483 (August 26, 2010). Under these circumstances, defendant's request to exclude the fees generated in the state court action is not well-taken. Accordingly, as it relates to the request for fees arising from the state court action, to the extent that those fees arise from a common core of facts with the present litigation, it is **RECOMMENDED** that the three motions for fees be **GRANTED** in accordance with the exclusions and reductions discussed *supra* and *infra*.

### 5. Deficiencies in *Billing Records*

Defendant also asks that the fee award be reduced because the *Billing Records* do not provide sufficient detail for this Court to determine the reasonableness of the entries. *Memo. Contra*, pp. 15-16. Plaintiff Abernathy disagrees, arguing that her counsel "has demonstrated adequate billing judgment" and that defendant "nit-picks" her billing statements. *Reply*, pp. 11-12. She also defends redactions contained in the *Billing Records* as well as those entries that contain the names of unknown persons, arguing that those entries are "relatively small" or "relatively minimal." *Id*. at 12.

Plaintiff Abernathy's arguments are not well-taken. The party moving for an award of fees bears the burden of establishing entitlement to the requested award. *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). Therefore, "'[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly.'" *Id*. (quoting *Hensley*, 461 U.S. at 433). In the case presently before the Court, plaintiff Abernathy's evidence in support of her substantial request for fees is shockingly deficient. As discussed

*infra*, the lack of documentation and ambiguous billing entries require a significant reduction in order to reach a total of hours "reasonably expended."  Although the Court will highlight a few of these egregious defects, it must be emphasized that multiple defects appear throughout the *Billing Records*.

### a. Entries containing multiple tasks, vague descriptions and undefined abbreviations

The *Billing Records* are replete with block entries containing multiple tasks in a single billing entry.  While some of these tasks appearing in a single entry may be reasonably expended, other tasks are not, and the block entry makes it impossible to determine how much time was spent on each activity.  The *Billing Records* also contain entries that are simply so general or undefined that it is impossible for this Court to determine whether or not the request for fees related to those tasks is reasonable.  By way of illustration, these types of deficiencies are reflected in the following entries:

| | | | |
|---|---|---|---|
| 1/30/10 | Conference with Client re: Mediation | | 1.0 |
| 1/30/10 | Draft Discovery & Deposition Questions | | 1.5 |
| * | * | * | * |
| 5/18/10 | Deposition Fall – Conference with Clients | | 0.5[8] |
| * | * | * | * |
| 1/17/11 | Conference with Tracy, Jenny, Email to Opposition | | |
| | | | 0.7 |
| * | * | * | * |
| 3/25/11 | Conference with Clients; File Motion to Continue; Review File | | 2.0 |

---

[8] This entry – including the same description, date and time billed - appears twice.  *See Billing Records*, p. 3.

```
        *               *               *               *

1/30/12    RF – Disc Rsps; Call to Ct; Clnt            1.0

        *               *               *               *

1/30/12    RF; Discovery Responses; Call to Ct, Client 1.0

        *               *               *               *

10/30/12   Review File; Cross Ehrenberg; Review Depo   3.0
           Notes – Ehrenberg; RF-update subpoena list

        *               *               *               *

12/5/12    Revise Motion; Review Witness + Exhibits    2.7
           Lists, Motion to Amend, Jury Instr; Depo
           Designations

        *               *               *               *

12/9/12    RF; Review Witness List, Conf w/Clnts       3.0

        *               *               *               *

1/5/13     LR:  Scope of EEOC investigations;          1.5
           read defense motion to dismiss

        *               *               *               *

7/23/13    Review files confirm filing of transcripts; 4.0
           Contact court reporter; review opening and
           finalize list of demonstratives
```

*Billing Records*, pp. 2-3, 5-9, 11.[9]  This Court has already recommended
that the fees related to the claims of Ms. Shipley and Ms. Brown be
denied.  The multiple block-billed entries present substantial hurdles
when attempting to excise such hours in order to calculate the number
of hours "reasonably expended" in pursuit of plaintiff Abernathy's
retaliation claim.

---

[9] For ease of reference, these citations to the *Billing Records* omit the
reference to the client / case, *i.e.*, plaintiff Abernathy.

The *Billing Records* also contain entries with limited detail or undefined abbreviations.  By way of example only, the Court notes the following vague entries:

| | | | |
|---|---|---|---|
| 2/1/11 | Revise | | 1.0 |
| * | * | * | * |
| 3/24/11 | Conference | | 1.0 |
| * | * | * | * |
| 5/11/11 | Plaintiff's Response | | 0.9 |
| 5/12/11 | Plaintiff's Response | | 0.5 |
| * | * | * | * |
| 7/28/11 | Review P.O. | | 0.3 |
| * | * | * | * |
| 7/7/12 | Review | | 1.0 |
| * | * | * | * |
| 10/27/12 | Subpoenas | | 0.5 |
| 10/29/12 | Subpoenas RF | | 2.0 |
| * | * | * | * |
| 12/11/12 | LR – Objection | | 1.5 |
| * | * | * | * |
| 12/14/12 | RF | | 1.1 |
| * | * | * | * |
| 12/14/12 | Review | | 1.5 |
| * | * | * | * |
| 7/6/13 | LR; review legal issues | | 2.0 |
| * | * | * | * |
| 7/13/13 | Subpoenas | | 2.0 |

*Id.* at 5, 7-10.  This limited detail prevents the Court from determining "with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."  *See Imwalle,* 515 F.3d at 552-53 (internal quotation marks and citation omitted).

Additionally, as plaintiff Abernathy concedes, seven different entries contain redactions.  Although redactions may be necessary to protect privileged information in some instances, plaintiff Abernathy's redactions in certain entries prevent the Court from determining if that time is properly billable.  *See Billing Records*, pp. 8-9, 11-13.  Providing only abbreviations or only a portion of a name as a way of identifying individuals is equally unhelpful.  *See*, *e.g.*, *id.* at 7-8 (listing "DB" and "Kelvin").  Although plaintiff Abernathy generally replies that "[t]hese are the names of persons such as investigators, law clerks, paralegals and administrative help with whom Plaintiff's counsel communicated regarding the case[,]" *Reply*, p. 12, this explanation is not contained in the sworn *Billing Records* and does little to justify to the Court that time spent with "DB" and "Kelvin" is properly billable.  Plaintiff Abernathy also contends that all of these entries are, in any event, "relatively limited" or "relatively minimal[.]"  *Id.*  This Court disagrees.  For example, the redacted entries and entries referencing unidentified persons total, at the very least, several thousand dollars and are therefore not "relatively minimal[.]"  *See*, *e.g.*, *Billing Records*, pp. 8-9, 11-13 (containing seven redacted entries totaling 9.1 hours billed at an hourly rate of $450.00 for a total of $4095.00).

**b.    Entries demonstrating poor billing judgment**

In addition, the *Billing Records* include at least three entries relating to essentially clerical tasks.  *See*, *e.g.*, *Billing Records*, pp. 7 (7.3 hours billed on July 26, 2012 to "[f]ile Trial Docs"), 11 (2.5 hours billed on January 6, 2013 to "[o]rganize files and prepare boxes for court"), 13 (3.0 hours billed on August 4, 2013 "[o]rganize files and boxes" and 0.5 hours billed on August 5, 2013 to "[p]ick up graphics").  These entries are troubling for at least two reasons.  First, a "'purely clerical or secretarial' activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead." *Gibson v. Scott*, No. 2:12-cv-1128, 2014 U.S. Dist. LEXIS 20576, at *10-11 (S.D. Ohio Feb. 19, 2014) (addressing request for fees under Section 1988) (citations omitted). *See also Hensley*, 461 U.S. at 437 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.").

Second, the time billed for this clerical activity appears to be grossly overstated.  For example, on July 26, 2012, 7.3 hours were billed for the activity "[f]ile Trial Docs[.]" *Billing Records*, p. 7. However, the Court's docket reflects that six (6) separate filings on plaintiff Abernathy's behalf were filed on July 25, 2012 between the period of 7:34 p.m. and 8:03 p.m. *See* ECF 65, 66, 67, 68, 69, 70. Stated differently, the docket reflects that plaintiff's six filings were completed in less than 30 minutes.  The request for 7.3 hours for "Fil[ing] Trial Docs," whether billed as attorney or clerical time, is therefore unsupported by the record.  Not only is such time not

33

properly included in a fee award, but the decision to include it undermines the overall credibility of the *Billing Records*.

### c. Billing one-tenth of an hour per email communication

In her *Third Motion for Fees,* plaintiff Abernathy also seeks an additional 205.9 hours spent on email communications, billed at an hourly rate of $250.00, for an additional fee of $51,475.00.  *Third Motion for Fees*, p. 2.  Adding this to her prior request for $178,750.00 plaintiff's total fee request now amounts to $230,225.00. *Id*.  Although plaintiff explains that she inadvertently omitted these 205.9 hours, the Court notes that she identified email communications in her *First Motion for Fees*.  *Id*. (citing *Stepter Affidavit*). Defendant opposes the inclusion of these additional fees, arguing, *inter alia*, that the list of email communications lacks sufficient detail to determine if the communications are properly billable; defendant also argues that the list confirms that Attorney Stepter failed to keep accurate, concurrent track of hours billed for such communications.  ECF 197, p. 2.

Defendant's arguments are well-taken.  The *Stepter Affidavit* identifies 2059 email communications, *id*. at ¶ 11, each of which Attorney Stepter bills at one tenth of one hour:

> As is my usual and customary practice, each of these emails
> is being billed at one tenth of an hour (0.1).  I went
> through the emails in these folders and removed ones from
> the attorney's fees total where it was not apparent that
> the information was used in the case, where a credible
> argument could be made that it should not be included or
> for other reasons.  The total number of emails submitted
> was then revised downward.  Redactions were made for
> attorney-client communications and communication with
> Assistants, Law Clerks, and Paralegals.  Redactions for
> names or last names were made where including the name was

34

not necessary.  Emails with redactions are still being considered in the total submitted to the Court.

*Id*. at ¶ 9.

As an initial matter, plaintiff Abernathy offers no authority or justification for billing one tenth of an hour for each email. Moreover, while Attorney Stepter reviewed and removed certain emails from the fee request, the reliability of this screening process is questionable at best.

In addition, this email list apparently serves as plaintiff Abernathy's only record of billing for these communications, *id.*; *Stepter Affidavit*, ¶¶ 6-9, 11, a fact that is problematic for at least two reasons.  First, the practice of using an email list instead of separately recording time billed for an email communication establishes that Attorney Stepter failed to keep contemporaneous time records.  This failure warrants a reduction in hours reasonably expended.  *See*, *e.g.*, *Hensley*, 461 U.S. at 439 n.13 (affirming reduction of hours "by 30 percent to account for [counsel's] inexperience and failure to keep contemporaneous time records"); *Imwalle,* 515 F.3d at 553 ("Courts in this circuit have reduced attorney fees on the basis of insufficient billing descriptions where the attorney did not 'maintain contemporaneous records of his time or the nature of his work[.]'") (citations omitted).  Second, the email list provides only the email's author, the date received and the subject, which is often only a word or two.  *See Exhibits C*, *D*, *E*, attached to *First Motion for Fees* (collectively, "the email list"). The email list does not provide sufficient information to enable the Court to determine whether or not certain email communications are

properly billable.  Additionally, multiple entries are also redacted, exacerbating the difficulty of making this determination.  For example, in some entries Attorney Stepter redacted all of the information in a particular entry (*i.e.,* the author, the subject and the date received), *see, e.g., Exhibit C*, p. 1,[10] or redacted the name of the author, *see*, *e.g.*, *Exhibit C*, pp. 1-8.  It is simply impossible, based on this record, to determine whether or not particular emails are properly billable.

Moreover, the record suggests that time spent on at least some of these email communications has been double-billed, *i.e.*, billed twice for the same activity.  Again, as noted *supra*, this practice undermines the propriety of including the fees requested in the *Third Motion for Fees* in a final award.  As noted *supra*, plaintiff Abernathy does not purport to include in the *Billing Records* the 2059 email communications contained in the email list.  *See Stepter Affidavit*, ¶¶ 6-9, 11; *Exhibits C*, *D*, *E*, attached to *First Motion for Fees*. However, the *Billing Records* reflect several entries for what appear to be the same email communications.  For example, the *Billing Records* contain an entry dated June 7, 2010, billing 1.0 hour, regarding "Draft Motion for NJ Court; Depo Notice – DeFusco; E-mail," *id*. at 4, while the email list reflects three emails on the same day, including one with the subject "Abernathy, et al. v. CCI and DeFusco." *Exhibit D*, p. 15.  Similarly duplicative entries appear on other dates throughout the record.  *Compare Billing Records*, p. 5 (entry dated

---

[10] In referencing the exhibits comprising the email list, the Court refers to the numbers at the bottom of the page.

January 17, 2011, billing 0.7 hours for "Conference with Tracy, Jenny, Email to Opposition), *with Exhibit D*, p. 6 (listing 9 email communications on the same date from Attorney Stepter or Attorney Reash, and one unidentified author, regarding trial witnesses and preparation); *Billing Records*, p. 9 (entry dated November 14, 2012, billing 0.6 hours for "Email to TA re: [REDACTED]"), *with Exhibit C*, p. 10 (listing an email from Attorney Stepter on the same date with a redacted subject).  For all of these reasons, plaintiff Abernathy has failed to establish that an award of $51,475.00 for 205.90 hours expended on email communications was reasonably expended.

### d.    Fees arising from the pursuit of fees

Finally, plaintiff Abernathy also seeks a fee award for 59.50 hours expended related to pursuing fees in this case.  *First Motion for Fees*, p. 15; *Billing Records*, pp. 13-14.  "[T]he recovery of fees for time spent preparing a party's request for attorney's fees is legitimate."  *Auto Alliance Int'l, Inc. v. United States Customs Serv.*, No. 04-1764, 155 Fed. Appx. 226, at *229 (6th Cir. Nov. 23, 2005) (citing *Weisenberger v. Huecker*, 593 F.2d 49, 53-54 (6th Cir. 1979)).  However, "[i]n the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial[.]"  *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986).  Here, excluding the 205.9 hours sought for the 2059 email communications and the 59.50 hours preparing and pursuing a request for fees, Attorney Stepter expended 655.50 hours. *Cf. Billing Records*, pp. 13-14 (representing that Attorney Stepter

37

spent 2.0 hours on August 23, 2013 engaging in "RF – attorney's fees; file motion" and 57.50 hours between September 5, 2013 and September 29, 2013 pursuing a fee request). Because three percent (3%) of these 655.50 hours amounts to 19.67 hours, plaintiff Abernathy's request for 59.50 hours in pursuit of fees exceeds the maximum amount permitted in this circuit. *See Coulter*, 805 F.2d at 151. Any amount over 3% of the total hours expended, *i.e.*, 19.67 hours, is not reasonably complensated.

Accordingly, as it relates to block billing, vague entries with insufficient detail, entries with undefined terms and names, billings exceeding the maximum amount permitted in this circuit, activities that are double-billed and 205.90 hours represented billing at a tenth of an hour for 2059 email communications, it is **RECOMMENDED** that the three requests for fees be **REDUCED**.

> **6.    Reasonableness of hours expended on the litigation in relation to the value of plaintiff Abernathy's claims and the degree of success achieved**

The jury returned a verdict against plaintiff Abernathy on her claim of *quid pro quo* sexual harassment but in her favor on the retaliation claim in the amount of $3,500 in compensatory damages. *Jury Verdict Forms*, ECF 157. Excluding (a) the 205.90 hours for time spent on email communications as set forth in the *Third Motion for Fees*, and (b) 39.83 hours in excess of the maximum allowed for "fees for fees" in the Sixth Circuit, Attorney Stepter spent 675.17 hours in this litigation and the state court action. *Billing Records*, pp. 13 (2.0 hours expended on fee request) 14 (57.50 hours spent on fee request and 715 hourly total); *Third Motion for Fees* (seeking fees for

205.90 hours for 2059 emails billed at one tenth of one hour each).
Multiplying 675.17 hours by an hourly rate of $250.00 yields a
lodestar fee of $168,792.50.  *First Motion for Fees*, p. 14; *Stepter
Affidavit*, ¶ 5; *Billing Records*.  Defendant urges this Court to reduce
the fee award in light of the modest amount of plaintiff Abernathy's
damages, the modest jury award, defendant's prior settlement offers
and counsel's poor judgment and disregard for economy in litigation.
*Memo. Contra*, pp. 16-17 (citing *Exhibit A-4*, plaintiff Abernathy's
estimated damages dated June 8, 2012).  Plaintiff Abernathy opposes
any reduction on these bases, contending that there is no requirement
that the size of the jury award be proportional to the amount of
attorney's fees and arguing that defendant acted in bad faith during
the settlement negotiations.  *Reply*, pp. 13-14.

"If . . . a plaintiff has achieved only partial or limited
success, the product of hours reasonably expended on the litigation as
a whole times a reasonable hourly rate may be an excessive amount.
This will be true even where the plaintiff's claims were interrelated,
nonfrivolous, and raised in good faith."  *Hensley*, 461 U.S. at 436.
Accordingly, the district court may use "relevant considerations
peculiar to the subject litigation" to determine either "the basic
lodestar amount and/or adjustments thereto[.]"  *Adcock-Ladd*, 227 F.3d
at 349 (citations omitted).  These factors may include the following:

(1) the time and labor required by a given case; (2) the
novelty and difficulty of the questions presented; (3) the
skill needed to perform the legal service properly; (4) the
preclusion of employment by the attorney due to acceptance
of the case; (5) the customary fee; (6) whether the fee is
fixed or contingent; (7) time limitations imposed by the
client or the circumstances; (8) the amount involved and
the results obtained; (9) the experience, reputation, and

> ability of the attorneys; (10) the 'undesirability' of the
> case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar
> cases.

*Id.* at 349 n.8 (quoting *Reed*, 179 F.3d at 469 n.2 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). *See also Binta B.*, 710 F.3d at 628 ("The factors which the district court may consider in determining such adjustments include the twelve in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).").  The Sixth Circuit has recognized that the degree of success obtained is "the most critical factor [in the adjustment calculation][.]"  *Id.* (citations omitted).  "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee; if a plaintiff obtains 'limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained.'"  *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005) (citations omitted).  Therefore, "[a]n award based on the total number of hours reasonably expended on the litigation might, however, result in an excessive amount if the claimant has achieved only partial success."  *Imwalle*, 515 F.3d at 552 (citing *Hensley*, 461 U.S. at 435).

The Sixth Circuit, however, has "'repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.'"  *Id.* at 554 (quoting *Deja Vu of Nashville*, 421 F.3d at 423).  Instead, where only partial success has been achieved, a court must consider:

> (1) whether the claims on which the plaintiff failed to
> prevail were or were not related to the claims on which he
> or she succeeded, and (2) whether the plaintiff achieved a

sufficient degree of success to render the hours reasonably
expended a satisfactory basis for awarding attorney fees.

*Id*. at 552.

Turning to the first consideration under *Imwalle*, defendant does
not appear to dispute that plaintiff Abernathy's dismissed and/or
abandoned claims in state court and the *quid pro quo* claim in this
action arise from a core of facts common with her successful
retaliation claim in this case. *Cf. Memo. Contra*, pp. 14-17. *See
also Imwalle*, 5515 F.3d at 555 ("This court has in fact held that
discrimination and retaliation claims are related for the purpose of
awarding attorney fees."). Proceeding with the analysis under
*Imwalle*, this Court is not persuaded, however, that plaintiff
Abernathy achieved a sufficient degree of success justifying more than
700 hours expended pursuing plaintiff Abernathy's and the related
claims. In making this determination, the Court does not simply
compare the requested attorney's fee with the $3500.00 jury award, nor
can it conclude that plaintiff Abernathy's victory on one of her two
claims at trial dictates a reduction in the award. Instead, the Court
reviews this litigation and the state court action as a whole. Having
done so, however, the Court finds that this litigation history reveals
only a modest degree of success despite multiple years of litigation
on several claims.

As set forth in detail *supra*, plaintiff Abernathy initiated the
state court action in June 2009, alleging *quid pro quo* sexual
harassment, hostile work environment sexual harassment, negligent
supervision and negligent retention. She filed the federal litigation
in February 2010 and engaged in discovery in this Court. On December

41

10, 2010, *i.e.,* approximately a year and a half later, the state court granted defendant Corinthian's motion for summary judgment as to the hostile work environment sexual harassment claim, but denied the motion as to the claims alleging *quid pro quo* sexual harassment, negligent retention and negligent supervision. As of that date, Attorney Stepter had expended over 185 hours, or, billed at an hourly rate of $250.00, incurred more than $46,000.00 in attorney's fees. *See Billing Records*, pp. 1-6.[11]

Thereafter, Attorney Stepter expended over 40 hours preparing for a trial in the state court action set for January 31, 2011. *Id.* at 4-5. Although the state court later continued the trial date to April 4, 2011, plaintiffs voluntarily dismissed the action without prejudice on March 30, 2011. Combined with work on, *inter alia*, discovery in the federal action, Attorney Stepter had expended over 240 hours by the end of March 2011, incurring approximately $60,000.00 in attorney's fees. *Id.* at 1-5. Stated differently, counsel expended $60,000.00 to prevail, in part, on summary judgment in the state court action, to prepare for trial in that court only to later dismiss the action, and to obtain discovery in this litigation.

The federal litigation proceeded with extensive discovery, including multiple depositions and discovery motions. Nevertheless, Ms. Shipley abandoned her pursuit of this litigation, resulting in the

---

[11] In reaching the total number of hours for this period, the Court added the subtotals that appear on each page. For example, for the period January 14, 2009 through November 24, 2009, the eight subtotals listed for that period were added together for a total of 31.7 hours. *Id.* at 1.

dismissal of her claims on April 10, 2012.[12]  As of June 8, 2012,
Attorney Stepter calculated plaintiff Abernathy's back pay loss to be
$36,000.00. *Exhibit A-4*, attached to *Memo. Contra.* (estimating back
pay loss "[f]rom March 2010 to April 2010 when she began employment
with her current employer is approximately $3500.00 (one month of loss
at $43,000.00)"). He also sought front pay "of 2-5 years [totaling
$86,000.00 to $215,000.00]." *Id.* (representing that plaintiff's
yearly salary was $43,000.00).[13]

On January 5, 2013, Ms. Brown decided not to proceed to trial[14]
and the Court continued the trial to August 5, 2013.  The record
reflects that Attorney Stepter expended over 212 hours between
December 29, 2012 and August 2013, incurring approximately $53,000.00
in attorney fees.  Prior to trial, plaintiff Abernathy demanded
$135,000.00; defendant's highest offer was $30,000.00.  *Memo. Contra*,
p. 16; *Reply*, p. 16.  *See also Balsley v. LCP, Inc.*, No. 1:08-cv-491,
2011 U.S. Dist. LEXIS 40152, at *16 (N.D. Ohio Mar. 31, 2011)
("Further, the court can consider Plaintiffs' settlement demand with
the jury award to evaluate Plaintiffs' overall success.").  Following
a five-day trial, the jury returned a verdict against plaintiff
Abernathy on her claim of *quid pro quo* sexual harassment, but in her

---

[12] For the period of January 26, 2012 to December 18, 2012, the *Billing Records*
provide no subtotals for each month. *Billing Records*, pp. 7-9.  The Court
declines to expend judicial resources examining each entry in the voluminous
billings for this period in order to calculate the hours expended and fees
incurred.  Instead, the Court simply notes that the hours expended in the
year between the voluntary dismissal of the state court action and the
dismissal of Ms. Shipley's claims in this litigation are significant. *Id.* at
5-7.
[13] The front pay sought therefore amounts to $86,000.00 to $215,000.00. *Id.*
[14] The record reflects that, as of December 18, 2012, Attorney Stepter had
expended over 444 hours, amounting to over $111,000 in fees. *Billing
Records*, p. 9.

favor on the retaliation claim in the amount of $3,500 in compensatory damages.  In sum, after more than four years of litigation in two different courts, plaintiff Abernathy lost on summary judgment as to one of her claims in state court, voluntarily dismissed the remaining state court claims, achieved modest evidentiary gains prior to trial in this action and prevailed on one of two claims at trial, resulting in a $3,500.00 jury award.  This limited success warrants a reduction in the hours reasonably expended and fee award.  *See Imwalle*, 515 F.3d at 552; *Isabel*, 404 F.3d at 416.

Plaintiff Abernathy nevertheless urges this Court to award the full amount of fees sought, contending that her discrimination and retaliation claims are interrelated and that the Sixth Circuit has rejected a reduction in a fee award where a plaintiff has prevailed on only some of her interrelated claims.  *First Motion for Fees*, pp. 6-8 (citing, *inter alia*, *Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013)).  In *Waldo*, however, the plaintiff sought and received damages in the amount of $300,000.00, the maximum award possible under Title VII.  *Waldo*, 726 F.3d at 812, 824.  The jury also awarded $7,500,000.00 in punitive damages.  *Id*. at 812.  While the plaintiff in *Waldo* did not prevail on all of her claims, the Sixth Circuit concluded that this damages award was an "excellent result," justifying a full fee award.  *Id*. at 824-25.  Conversely, in the case presently before this Court, plaintiff Abernathy voluntarily dismissed her state court claims and proceeded to trial on her claims of *quid pro quo* sexual harassment and retaliation.  While she sought $36,000.00 in backpay and $86,000.00 to $215,000.00 in front pay, *see*

44

*Exhibit A-4*, attached to *Memo. Contra*, the jury awarded her only
$3,500.00 in compensatory damages on only her retaliation claim.  In
short, the circumstances of this case establish that plaintiff
Abernathy's damages award was not an "excellent result." *Waldo* is
therefore inapposite.  Accordingly, this Court cannot conclude that
plaintiff Abernathy enjoyed a degree of success sufficient to justify
an award of attorney's fees in the amount of $178,500.00.  Stated
differently, awarding the requested amount of fees in this case would
result in a windfall to counsel, which this Court has been cautioned
to avoid.  *See*, *e.g.*, *Adcock-Ladd*, 227 F.3d at 349 ("A 'reasonable'
attorney's fee should therefore be 'adequately compensatory to attract
competent counsel yet which avoids producing a windfall for
lawyers.'") (internal citations omitted); *Binta B.*, 710 F.3d at 612
("Congress and the Supreme Court have made it abundantly clear that
the aim of . . . § 1988 is not for the purpose of aiding lawyers.")
(internal quotation marks omitted).  For all of these reasons, it is
**RECOMMENDED** that the award be reduced as discussed *infra* to reflect
plaintiff Abernathy's partial success in this action.

### 7.  Calculation of fee award

As set forth *supra*, in determining a reasonable fee award, a
court begins by calculating the movant's "lodestar," "which is the
proven number of hours reasonably expended on the case by an attorney,
multiplied by a reasonable hourly rate." *Binta B.*, 710 F.3d at 627
(quoting *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir.
2005)).  A court must eliminate from the initial lodestar calculation
hours that are "excessive, redundant, or otherwise unnecessary[.]"

*Id*. at 627-28 (internal quotation marks and citations omitted).
"Where reductions to the requested number of hours reasonably expended
on the litigation are appropriate, a court has the discretion to
utilize a simple across-the-board reduction by a certain percentage as
an alternative to line-by-line reductions, particularly when fee
documentation is voluminous." *Project Vote v. Blackwell*, No. 1:06-CV-
1628, 2009 U.S. Dist. LEXIS 34571, at *20-21 (N.D. Ohio Mar. 31, 2009)
(collecting cases). *See also Hensley*, 461 U.S. at 436-37 (stating
that trial courts "may simply reduce the award" instead of
"attempt[ing] to identify specific hours that should be eliminated");
*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Industrial
and Service Workers Inter'l Union v. Kelsey-Hayes Co.*, 750 F.3d 546,
560 (6th Cir. 2014) (affirming fee award imposing an across the board
reduction); *Auto Alliance Intern., Inc. v. United States Customs
Serv.*, No. 04-1764, 155 F. App'x 226, at *228 (6th Cir. Nov. 23, 2005)
(approving the use of across the board reductions) (citing *Coulter v.
Tenn.*, 805 F.2d at 151); *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir.
1997) (affirming across-the-board reduction of 25% for duplicative
hours), *overruled on other grounds by Pollard v. E.I. du Pont de
Nemours & Co.*, 532 U.S. 843 (2001); *Northeast Coalition of the
Homeless v. Brunner*, No. 2:06-cv-896, 2010 U.S. Dist. LEXIS 131009
(S.D. Ohio Nov. 30, 2010) ("[I]f reductions to the requested number of
hours are appropriate, a court has the discretion to utilize a simple
across-the-board reduction by a certain percentage as an alternative
to line-by-line reductions."); *Hisel v. City of Clarksville*, 3:04-
0924, 2007 U.S. Dist. LEXIS 71766, at *15 (M.D. Tenn Sept. 26, 2007)

("While cutting hours may appear 'arbitrary,' it is an 'essentially fair approach,' and an across-the-board percentage cut is 'a practical means of trimming the fat from a fee application.'") (internal citations omitted).  In short, courts have no obligation to expend judicial resources in examining billing records on an entry-by-entry basis:

> But trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating an attorney's time.

*Fox v. Vice*, _ U.S. _, 131 S.Ct. 2205, 2216 (2011).

In using an across-the-board reduction, courts have reduced the number of hours reasonably expended in various percentages in light of excessive billing and other considerations unique to that case.  *See*, *e.g.*, *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Industrial and Service Workers Inter'l Union*, 750 F.3d at 560 (affirming fee award imposing an across-the-board reduction in the number of hours by 10% where the number of hours claimed was unreasonably excessive); *Auto Alliance Intern., Inc.*, 155 F. App'x 226, at *228 (recognizing "the propriety of an across the board reduction based on excessive or duplicative hours" and affirming reduction of fee award by 25% for "general excessiveness in billing"); *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, No.: 2:08-cv-00492, 2014 U.S. Dist. LEXIS 151691, at *29 (recommending a 90% reduction in light of deficiencies in billing records), *adopted in part by Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 2:08-cv-00492, 2014 U.S. Dist. LEXIS 8303, at *5-6 (using an across the

board reduction of 85% instead of 90% in light of, *inter alia*, deficient billing records, overbilling and a majority of the hours expended were unrelated to the pursuit of successful claims).

As with the number of hours expended, courts may impose an across-the-board reduction of the lodestar amount in order to adjust the fee award in light of limited success on the merits or in light of other considerations. *See, e.g., Ky. Rest. Concepts Inc. v. City of Louisville*, No. 03-5748, 117 Fed. App'x. 415, at *421-422 (6th Cir. Dec. 1, 2004) (affirming across the board lodestar reduction of 35% where movants "were not successful on all of their claims"); *Saieg v. City of Dearborn*, No. 09-12321, 2012 U.S. Dist. LEXIS 31705, at *13 (E.D. Mich. Jan. 27, 2012) ("'[T]he district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application.'") (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). In calculating an across-the-board reduction, there is "'no precise rule or formula for making these determinations.'" *Ky. Rest. Concepts Inc.*, 117 Fed. App'x. at *421 (quoting *Hensley*, 461 U.S. at 436-37).

In the case presently before the Court, a reduction of the hours expended and fee award is warranted. However, as the discussion *supra* demonstrates, a line-by-line analysis to determine the appropriate reductions for each deficiency throughout the lengthy *Billing Records* is not just impractical, but is indeed impossible. Accordingly, the Court concludes that a 75% across-the-board reduction should apply to

the 675.15 hours[15] for which plaintiff Abernathy seeks compenation.  As
set forth in more detail *supra*, the following findings support this
across-the-board reduction: (1) some of the time itemized was related
to only the claims of Ms. Shipley and Ms. Brown, including multiple
depositions of various individuals; (2) the *Billing Records* are
replete with block entries totaling hundreds of hours containing
multiple tasks, which makes it impossible to calculate time spent on
activity reasonably expended in support of plaintiff Abernathy's
claims; (3) numerous billing entries contain insufficient descriptions
of activities, undefined abbreviations and extensive redactions, which
preclude evaluation as to whether those hours were reasonably
expended; (4) multiple entries reflect poor billing judgment, such as
excessive time for simple activities and double-billing; and (5)
plaintiff Abernathy achieved only limited success on her claims.
After applying this 75% across-the-board reduction to the 675.17 hours
billed, the number of hours reasonably expended totals 168.81.  Under
the lodestar method of calculation, the Court applies this multiplier
(168.81 hours) to a reasonable hourly rate of $250.00, resulting in a
fee award of $42,202.50.

    In reaching this fee amount, the Court concludes that this award
effects "rough justice." *See Fox*, 131 S. Ct. at 2216.  Although this
across-the-board reduction is significant, the fee award is
nevertheless substantial in light of the extensive billing

---

[15] For the reasons discussed *supra*, it is recommended that plaintiff
Abernathy's request for an additional 205.9 hours for 2059 email
communications, each billed at one tenth of an hour, be rejected and that
plaintiff Abernathy recover no more than 19.67 hours for time spent pursuing
her fee request.

deficiencies and modest success at trial.  *Cf. City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality op.) (upholding an attorney fee award that was more than seven times greater than the damages awarded to plaintiffs); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) ("In the civil rights area, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages."); *McHenry v. Chadwick*, 896 F.2d 184, 189 (6th Cir. 1990) (affirming an attorney fee award more than five times the damages award).  The fee award adequately compensates counsel based on the evidence in the record, yet avoids the windfall that would result if the Court awarded fees totaling nearly $180,000.00.  Moreover, the Court is not convinced that this reduction will undermine the goal of attracting competent counsel, *see Adcock-Ladd*, 227 F.3d at 349, because the decision to impose a substantial reduction is based in large part on the gross deficiencies in billing documentation reflected in the record.

C.    **Reasonableness of Requested Expenses**

Plaintiff Abernathy also seeks $15,363.88 expenses.  *Second Motion for Fees* and exhibits attached thereto.[16]  In support of her request, she provides the following itemization:

| | | |
|---|---|---|
| 1. | Parking- | $100.00 |
| 2. | Postage- | $48.07 |
| 3. | Copies- | $1,479.14 |

---

[16] Plaintiff's initial expense request totaled $11,621.55.  *See First Motion for Fees*.

50

| | | |
|---|---|---|
| 4. | Investigation- | $1,674.63 |
| 5. | Delivery- | $33.20 |
| 6. | Notary- | $25.00 |
| 7. | Depositions- | $7,672.05 |
| 8. | Courier- | $240.61 |
| 9. | Depositions 2- | $1,977.50 |
| 10. | Court Fees- | $138.00 |
| 11. | Jury- | $300.00 |
| 12. | Travel Expenses (Jan. 2013)- | $708.64 |
| 13. | Travel Expenses (Aug. 2013)- | $967.04 |
| | **TOTAL** | **$15,363.88** |

*Exhibit A*, attached to *Third Motion for Fees*.  *See also Exhibits 1-13*
(receipts, invoices and calculations of total expenses), attached to
*Third Motion for Fees*.

Section 1988 authorizes an award of "incidental and necessary
expenses incurred in furnishing effective and competent representation
as part of the award of attorney fees."  *Waldo,* 726 F.3d at 827
(internal quotation marks omitted).  A moving party may recover out-
of-pocket expenses, including expenses "'incurred by the attorney
which are normally charged to a fee-paying client, in the course of
providing legal services,' such as '[r]easonable photocopying,
paralegal expenses, and travel and telephone costs.'"  *Id.* (quoting
*Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 639
(6th Cir. 1979)).  The district court may use its "best judgment" to
determine what expenses are "reasonable and necessary[.]"  *Id.*
(internal quotation marks and citation omitted).

51

In the case presently before the Court, defendant challenges four categories of expenses for which plaintiff Abernathy seeks reimbursement. *Memo. Contra*, pp. 15-16. First, defendant challenges plaintiff's reimbursement of a jury deposit for the state action, "which was most certainly refunded upon dismissal." *Id*. at 15. Plaintiff Abernathy responds that she will adjust her total if she can confirm that the jury deposit was refunded. *Reply*, p. 12. As an initial matter, the Court notes that neither party has provided the receipt or invoice reflecting the total amount of the jury deposit. After sifting through plaintiff Abernathy's supporting documentation, the Court understands that the jury deposit in the state court action totaled $300.00. *See Exhibit 11*, attached to *Second Motion for Fees*. However, the record also includes a document from the Franklin County Clerk of Court reflecting $100.00 for "Clerk Fee Fund" and $351.00 for "Refund of Balance of Security Deposit." *Exhibit 10*, PAGEID#:3109, attached to *Second Motion for Fees*. It is not immediately clear to the Court that a jury deposit, in any amount, has been reimbursed to plaintiff Abernathy. As the party seeking reimbursement of costs, plaintiff has the burden of establishing her right to reimbursement. *Cf. Potter v. Blue Cross Blue Shield of Mich*., No. 10-14981, 2014 U.S. Dist. LEXIS 44720, at *55-56 (E.D. Mich. Jan. 30, 2014) (stating that the party seeking reimbursement for costs has the burden of showing that the costs were necessary). Accordingly, plaintiff Abernathy has failed to demonstrate her entitlement to a $300.00 reimbursement for a jury fee.

Next, defendant challenges the request for reimbursement for plaintiff Abernathy's travel, noting that some of the supporting documentation "does not identify her as the person who incurred the cost." *Memo. Contra*, p. 15.  Plaintiff Abernathy complains that defendant "nit-picks" her travel receipts and that, "[i]rrespective of who paid for Ms. Abernathy's travel, that person(s) would have to be reimbursed by Ms. Abernathy thus a valid claim for travel expenses has been made." *Reply*, pp. 12-13.  Again, neither party cites to the record or otherwise provides a total amount for these expenses. However, in light of the record and the parties' arguments, the Court understands defendant to specifically challenge plaintiff Abernathy's request for reimbursement for air travel that purportedly lacks sufficient documentation.  Documents supporting the expense request include a one-page document entitled, "TRAVEL EXPENDITURES FROM JANUARY 2013 TRIAL," which provides the following breakdown:

1.    Gas - $33.52

2.    Rental Car & Insurance- $290.12

3.    Luggage Fee- $20.00

4.    Air Fare- $200.00 (1/2/13)

5.    Air Fare- $165.00 (1/7/13)

        TOTAL:  $708.64

*Exhibit 12*, PAGEID#:3118, attached to *Second Motion for Fees*.

Similarly, another one-page summary entitled, "TRAVEL EXPENDITURES FROM AUGUST 2013 TRIAL," provides the following itemization:

1.    Air Fare- $259.30 (8/4/13)

53

       2.     Air Fare- $182.80 (8/10/13)

       3.     Rental Car & Insurance- $524.94

              TOTAL:  $967.04

*Exhibit 13*, PAGEID#:3125.

The documents supporting both of these itemizations include receipts for gas; rental car receipts with plaintiff Abernathy listed as the driver; a US Airways receipt reflecting a round-trip flight from Florida to Ohio in August 2013 for plaintiff Abernathy; and two documents (one dated January 2, 2013 and one dated January 7, 2013) reflecting "Payment Sent" from a PayPal Account with the subject line "Litigation Travel Expense; AirFare – Abernathy, et. al. v. Corinithinan Colleges" with the recipient and email address redacted. *See Exhibits 12* and *13*. Although plaintiff Abernathy's expenses for airfare could have been more thoroughly documented, the Court finds that the present record adequately establishes her right to reimbursement for travel expenses. *Cf. Waldo*, 726 F.3d at 827 (stating that the district court may use its best judgment in determining whether claimed expenses are reasonable and necessary).

Third, defendant challenges expenses related to "local mileage and local parking expenses that any litigant would incur." *Memo. Contra*, p. 15. Plaintiff Abernathy does not address this challenge. *See generally Reply*; *Third Motion for Fees*. As detailed *supra*, plaintiff seeks $100.00 for parking, *Exhibit A* and *Exhibit 1*, attached to *Second Motion for Fees*, and $33.52 for gas, *Exhibit 12*, PAGEID#:3118 - PAGEID#:3120, attached to *Second Motion for Fees*. The Court agrees with defendant that any litigant would incur such fees.

54

Accordingly, the Court concludes that its discretion is better exercised in denying the request for these expenses, which total $133.52. *Cf. Tinch v. City of Dayton*, 199 F. Supp. 2d 758, 771 (S.D. Ohio 2002) (denying a request to recover, *inter alia*, expenses incurred at a local parking garage because the cost was not one listed as recoverable under 28 U.S.C. § 1920).

Finally, defendant challenges the request for reimbursement of costs associated with the depositions of individuals who had no knowledge of and were irrelevant to the claims of plaintiff Abernathy, namely, the depositions of Jennifer Brown, Lawana Shipley, Renee Fall, Pamela LeMaster, Billie Barz and Deneen Merchant. *Memo. Contra*, pp. 15-16. For the reasons discussed *supra*, defendant's argument is well-taken. In wading through the deposition-related invoices, the Court notes that plaintiff Abernathy appears to have submitted the same invoice more than once. *Compare*, *e.g.*, *Exhibit* 7, PAGEID#:3073 (invoice dated February 2, 2011 for $350.00 for costs associated with proofreader charges for the deposition of Renee Fall), *with* PAGEID#:3075 (same). *See also id*. at PAGEID#:3056 (listing both expenses in a list of deposition expenses). To the extent that the Court can reconstruct these matters, these impermissible deposition expenses total $2862.55. *See Exhibit* 7, PAGEID#:3068 (Pamela LeMaster's deposition costs totaling $178.80), PAGEID#:3069 (deposition costs of Billie Barz, Pam LeMaster and Deneen Merchant totaling $165.00), PAGEID#:3070 (Pamela LeMaster's deposition costs totaling $212.50), PAGEID#:3071 (deposition costs of Billie Barz and Deneen Merchant totaling $254.35), PAGEID#:3072 (Renee Fall's

deposition costs totaling $695.65), PAGEID#:3073 (Renee Fall's
deposition costs totaling $350.00), PAGEID#:3074 (Renee Fall's
deposition costs; reporter attendance; totaling $247.50), PAGEID#:3075
(Renee Fall's deposition costs totaling $350.00), PAGEID#:3078 (Renee
Fall's deposition costs totaling $96.25), PAGEID#:3079 (Renee Fall's
deposition costs totaling $312.10).  Accordingly, as it relates to the
request for reimbursement for expenses, it is **RECOMMENDED** that the
three motions for fees be **GRANTED in part and DENIED in part**.
Specifically, the request for reimbursement for the following expenses
should be denied: (1) $300.00 for a jury fee; (2) $133.52 for local
mileage and local parking; and (3) $2862.55 for the costs associated
with the depositions of Jennifer Brown, Lawana Shipley, Renee Fall,
Pamela LeMaster, Billie Barz and Deneen Merchant.  Subtracting these
amounts (totaling $3,296.07) from plaintiff Abernathy's request for
expenses totaling $15,363.88 results in an expense award of
$12,067.81.  It is therefore **RECOMMENDED** that plaintiff Abernathy be
awarded $12,067.81 in expenses.

   **D.   Prejudgment Interest**

   The jury awarded plaintiff Abernathy $3,500.00 in compensatory
damages on her retaliation claim.  *Jury Verdict*, pp. 2-3.  In moving
for an award of attorney's fees and expenses, plaintiff Abernathy also
asks for prejudgment interest on the jury award.  However, apart from
referring to the request in the caption of a motion, *Plaintiff's
Motion for an Award of Attorneys Fees, Costs and Prejudment* [sic]
*Interest*," ECF 167, and a single sentence in that motion, *Id*. at 16.
("Plaintiff also requests prejudgment interest on the jury verdict

56

award of three thousand five hundred dollars ($3500.00)"), plaintiff
offers no support for that request.  Defendant does not address the
request for prejudgment interest.

An award of prejudgment interest "serves to compensate for loss
of use of money due as damages from the time the claim accrues until
judgment is entered, thereby achieving full compensation for injury
those damages are intended to redress." *West Virginia v. United
States*, 479 U.S. 305, 311 n.2 (1987).  In this circuit, courts
typically award prejudgment interest on an award of back pay. *See*,
*e.g.*, *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1098 (6th
Cir. 1996) ("Indeed, it is ordinarily an abuse of discretion not to
include pre-judgment interest in a back-pay award.") (citations and
internal punctuation omitted); *EEOC v. Wilson Metal Casket Co.*, 24
F.3d 836, 842 (6th Cir. 1994) ("This court commonly awards prejudgment
interest on back pay awards.").  Otherwise, "awards of prejudgment
interest in Title VII cases are within the discretion of the trial
court 'in the absence of a statutory provision to the contrary.'"
*JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Corp.*, Nos. 12-2094;
13-1172, 2014 U.S. App. LEXIS 12519, at *25 (6th Cir. July 2, 2014)
(quoting *EEOC v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566,
579 (6th Cir. 1984)).  *See also Lentz v. City of Cleveland*, Nos. 07-
4385/07-4386, 333 Fed. Appx. 42, at *51 (6th Cir. June 4, 2009) ("But
awarding prejudgment interest is at the discretion of the district
court . . . and the court did not deem it necessary."); *Scales v. J.C.
Bradford & Co.*, 925 F.2d 901, 909 (6th Cir. 1991) ("The award or
denial of pre-judgment interest is within the sound discretion of the

trial judge."). In the present case, the Court is unable to conclude that the $3500.00 jury award qualifies as back pay and finds that an award of prejudgment interest on that amount is unwarranted.

First, plaintiff Abernathy does not argue, and presents no evidence, that the $3500.00 jury award constitutes a back pay award. The verdict form simply awards compensatory damages in that amount with no characterization of the award as back pay. *See Verdict Forms*, ECF 157, PAGEID#:2838. Similarly, the judgment entered in this case does not specifically reference prejudgment interest. *Clerk's Judgment*, ECF 162 ("IT IS ORDERED AND ADJUDGED that pursuant to the August 9, 2013 jury verdict, Plaintiff recover of the Defendant the sum of $3,500.00 with interest thereon at the rate of 0.12% as provided by law, and her costs of action."). *See also* 28 U.S.C. § 1961 (requiring district courts to award post-judgment interest "on any money judgment in a civil case"). Finally, plaintiff Abernathy's closing argument, which sought a very different amount of back pay loss, further undermines any argument that the compensatory damages was actually awarded as back pay:

> You heard testimony from Tracy [Abernathy] about her damages. She should have been awarded the position. The position paid more than what she was making and she assessed her damages from the denial of the promotion at about $36,000. That's her back pay loss. We're asking that you award that to her as back pay.

*Transcript of Trial Proceedings*, ECF 178, PAGEID#:3454. Based on this record, the Court cannot conclude that the $3500.00 jury award constitutes back pay.

Second, the Court notes that the *Amended Complaint*, ECF 11, contains no request for prejudgment interest. *See id*. at 6 (asking

58

the Court to grant, *inter alia*, "such other and further relief as may be just and equitable"). *See also*, *e.g.*, *Silge v. Merz*, 510 F.3d 157, 160 (2nd Cir. 2007) ("We now hold, to the extent it was previously unclear, that the conventional additional demand for 'such other and further relief as the Court deems just and proper' does not constitute a demand for prejudgment interest."). Likewise, plaintiff Abernathy's attorney's fee statements and damage calculations provided to defendant are silent on the issue of prejudgment interest. *See Exhibits A-2*, *A-3* and *A-4*. Instead, on the record presently before the Court, it appears that plaintiff's first request for prejudgment interest surfaced on September 30, 2013, more than two and a half years after this action was filed, as a conclusory sentence in the *First Motion for Fees*. Stated differently, neither defendant nor this Court had any notice of plaintiff Abernathy's intent to seek prejudgment interest. Where a party has failed to assert a request for prejudgment interest, the district court has the discretion to deny a request for the award of such interest. *Cf. Scales*, 925 F.2d at 909 ("Because Scales did not request any prejudgment interest in her damage calculation, we find no abuse of discretion in this case."); *Grant v. Shaw Envtl., Inc.*, No.: 3:08-CV-350, 2012 U.S. Dist. LEXIS 44219, at *6-8 (E.D. Tenn Mar. 28, 2012) (refusing to deny award of prejudgment interest, even though the defendant argued that it was "surprised" by the request, where, *inter alia*, the plaintiff had pled a claim for prejudgment interest in the complaint). Considering the present record as a whole, including plaintiff Abernathy's wholly deficient conclusory request, the Court concludes that its discretion

is better exercised in denying the request for prejudgment interest. Accordingly, as it relates to prejudgment interest, it is **RECOMMENDED** that the three motions for fees be **DENIED**.

    **WHEREUPON**, it is **RECOMMENDED** that *Plaintiff's Motion for an Award of Attorneys Fees, Costs and Prejudment* [sic] *Interest*, ECF 167, *Plaintiff's Motion for Leave to Supplement Instanter Motion for Attorney's Fees, Costs and Prejudgment Interest*, ECF 169, and *Third Motion for Leave to Supplement Instanter Motion for Attorney's Fees, Costs and Prejudgment Interest*, ECF 195, be **GRANTED in part and DENIED in part** consistent with the foregoing.  In summary:

- It is **RECOMMENDED** that $250.00 is an appropriate hourly rate;

- It is **RECOMMENDED** that the request for an award of fees relating only to the claims abandoned by Ms. Shipley and Ms. Brown be **DENIED**;

- It is **RECOMMENDED** that the request for an award of fees relating to the state court action be **GRANTED;**

- It is **RECOMMENDED** that the request for an award of fees relating to local travel time be **DENIED**;

- It is **RECOMMENDED** that the request for an award of fees for 205.9 hours expended on 2059 email communications be **DENIED**;

- It is **RECOMMENDED** that plaintiff Abernathy recover, in connection with time spent pursuing the requests for attorney's fees, no more than 3% of the total hours expended on this litigation, *i.e.*, 19.67 hours;

- It is **RECOMMENDED** that an across-the-board reduction of 75% be applied to reflect deficiencies in the *Billing Records* as well as plaintiff Abernathy's limited success in order to reflect hours "reasonably expended";

- It is **RECOMMENDED** that plaintiff Abernathy be awarded $42,202.50 in attorney's fees;

- It is **RECOMMENDED** that the request for reimbursement for the following expenses be **DENIED**: (1) $300.00 for a jury fee; (2) $133.52 for local mileage and local parking; and (3) $2862.55 for the costs associated with the depositions of Jennifer Brown, Lawana Shipley, Renee Fall, Pamela LeMaster, Billie Barz and Deneen Merchant;

- It is **RECOMMENDED** that plaintiff Abernathy be awarded $12,067.81 in expenses; and

- It is **RECOMMENDED** that the request for prejudgment interest be **DENIED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

August 29, 2014                                        *s/Norah McCann King*
                                                      Norah McCann King
                                                      United States Magistrate Judge

61